MURRAY (NICHOLAS v.). See Case No. 10,-223.

MURRAY (OTT v.). See Case No. 10,615.

### Case No. 9,967.

MURRAY et al. v. PATRIE.

[5 Blatchf. 343.] [1]

Circuit Court, S. D. New York. July 17, 1866.

REMOVAL OF CAUSES—REMOVAL AFTER JUDGMENT—ORIGINAL JURISDICTION—CASES ARISING UNDER CONSTITUTION.

1. Under the constitution of the United States, causes may be removed from state courts to the circuit courts of the United States after, as well as before, judgment.

[Cited in Fisk v. Union P. R. Co., Case No. 4,-827.]

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

2. Original jurisdiction may be conferred by congress upon the circuit courts of the United States, by the removal into them, from the state courts, of cases arising under the constitution, the laws of the United States, and treaties.

[Cited in Fisk v. Union P. R. Co., Case No. 4,827; Woolridge v. M'Kenna, 8 Fed. 658.]

[Cited in Stone v. Sargent, 129 Mass. 506.]

3. Such a case arises when the question assumes such a form that the judicial power is capable of acting on it.

4. When a case is so removed, the question whether the removal is in violation of the constitution, and whether the case is one arising under the constitution, &c., may be raised on the trial.

[Cited in Eaton v. Calhoun, 15 Fed. 159.]

[5. Cited in Fisk v. Union P. R. Co., Case No. 4,827, to the point that where necessary to the exercise of its jurisdiction a federal court will issue a writ of mandamus or other particular process.]

[6. Cited in Tennessee v. Davis, 100 U. S. 294, in dissenting opinion of Mr. Justice Clifford, to the point that removals under section 643, Rev. St., are confined to civil actions.]

This was an application for an order requiring the clerk of the supreme court of the state of New York for the county of Greene, to make a return to a writ of error issued by this court, to remove into this court a suit brought in such state court by Albert W. Patrie against Robert Murray and William Buckley, to recover damages for false imprisonment, and in which a judgment had been rendered by such state court in favor of Patrie, for $9,343.34. After such judgment was rendered, the defendants therein sued out such a writ of error.

Samuel Blatchford and Clarence A. Seward, for plaintiffs in error.

Amasa J. Parker, for defendant in error.

NELSON, Circuit Justice. The principal ground of defence set up on the trial of the suit in the state court was, that the arrest and imprisonment of the plaintiff therein, which occurred between the 27th of August, 1862, and the 3d of September, 1862, took place under the order of the president of the United States. The fourth section of the habeas corpus act of March 3, 1863 (12 Stat. 756), provides, that any order of the president, &c., made during the Rebellion, shall be a defence, in all courts, to any action, &c., pending or to be commenced for any arrest or imprisonment made or committed under such order, or under color of any law of congress. The fifth section provides for the removal of any such suit commenced in a state court, to the circuit court of the United States, either before or after judgment. As respects the latter, the section declares, that "it shall, also, be competent for either party, within six months after the rendition of a judgment in any such cause, by writ of error or other process, to remove the same to the circuit court of the United States of that district in which such judgment shall have been rendered; and the said circuit court shall thereupon proceed to try and determine the facts and the law in

such action, in the same manner as if the same had been there originally commenced, the judgment in such case notwithstanding."

This provision of the 5th section, and, indeed, the whole of it as to the removal of causes, is a literal copy of the 6th section of the act of March 3, 1815 (3 Stat. 233). The question of the removal of causes from the state courts to the circuit courts of the United States was discussed very much in Martin v. Hunter's Lessee, 1 Wheat. [14 U. S.] 346-350, and no doubt was entertained that it might take place after, as well as before, judgment. It was again commented upon in the case of Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 821-828, and especially by Mr. Justice Johnson, in his dissenting opinion (pages 884-889.) Mr. Justice Johnson was inclined to the conclusion, that congress could not confer original jurisdiction upon the circuit courts of the United States, either directly or by removal from state courts, in cases arising under the constitution, the laws of the United States, and treaties," &c., inasmuch as the federal court must assume the jurisdiction upon the simple hypothesis that such question had arisen, and that, until such question had actually arisen and was presented for decision, the case was exclusively cognizable in the state court. This view led the learned justice to maintain that the question could be brought properly before the federal court only under the 25th section of the judiciary act [1 Stat. 85], as it could not be ascertained whether the case had actually arisen, till it was heard and decided. The chief justice, who delivered the opinion of the court, held that jurisdiction could be entertained when the question assumed such a form that the judicial power was capable of acting on it; that it then became a case; and that the judicial power extended to all cases arising under the constitution, &c.

I admit, that the bringing of the suit in the federal court, and the averments in the declaration in conformity with the act of congress conferring the jurisdiction, do not vest it necessarily or definitely in the court. If it did, the argument of the learned counsel against this motion would be conclusive, namely, that the principle would draw within the federal jurisdiction cases without limit, at the election of the plaintiff. But the defendant may meet the question, whether or not it is a case arising under the constitution, &c., by pleading, or on the trial, as I have endeavored to show in Dennistoun v. Draper [Case No. 3,804], and thus confine the jurisdiction within the constitutional limit. So in the case of original jurisdiction by removal from the state court.

An objection is taken to the removal in this case, on the ground of its violation of the 7th amendment to the constitution, which is, that "no fact tried by a jury shall be otherwise reëxamined in any court of the United States, than according to the rules of

the common law." Whether or not this amendment would deprive this court of jurisdiction, I am not inclined to determine on this motion. It is a question that may come up on the trial, and be there ruled by the court, and the ruling can be reviewed on error by the supreme court. The question, also, whether the fourth section of the act of March 3d, 1863, is constitutional, and, if so, whether it applies to this case, are questions that belong to the trial, and need not now be examined.

It was suggested by the counsel for both parties, on the argument, that, if the court had any serious doubts upon the questions involved in this removal, the decision be reserved, and the cause heard before both of the judges, that the parties might have the benefit of a division of opinion, if such should be the result. Having come to the conclusion that the objections to the jurisdiction are properly available on the trial, the suggestion is unimportant.

Let an order be entered requiring the return to be made.

---

MURRAY (UNITED STATES v.). See Cases Nos. 15,842 and 15,843.

MURRAY (WOOLFOLK v.). See Case No. 18,028.

---

### Case No. 9,968.

### In re MURRIN et al.

[2 Dill. 120;[1] 2 Ins. Law J. 524; 4 Bigelow Ins. Cas. 171; 8 N. B. R. 6.]

Circuit Court, E. D. Missouri. April 2, 1873.

BANKRUPTCY — LIFE INSURANCE POLICY PAID FOR BY THE WIFE FOR HER HUSBAND'S BENEFIT— CONTEST BETWEEN ASSIGNEE AND HUSBAND FOR PROCEEDS OF POLICY.

A wife possessed of a separate estate, secured to her by an ante-nuptial settlement, obtained in 1869, a policy of insurance upon her life, payable upon her death to her husband. She paid the premium for a year out of her own estate. Before the year expired her husband was adjudicated a bankrupt. Out of her own estate she paid the premium for the two following years, 1870 and 1871, and before the next premium fell due she died; and the question arose between the husband, and his assignee in bankruptcy, which was entitled to the proceeds of the policy: *Held*, considering the nature of the contract of insurance and the obvious intention of the wife, that the assignee had no right to the proceeds, but that they belonged to the husband.

[Cited in brief in Pullis v. Robinson, 73 Mo. 205.]

Bankruptcy. This cause is brought here to revise an order of the district court for the eastern district of Missouri, overruling the demurrer of the assignee in bankruptcy to the petition of James Murrin, one of the bankrupts, and directing the assignee to pay the bankrupt Murrin the proceeds in his hands of two policies of life insurance, less the sum paid by him for costs and expenses of collec-

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

tion. The petition thus demurred to is as follows: "To the Hon. Samuel Treat, Judge of Said Court: The petition of James Murrin, one of the said bankrupts, respectfully represents, that a petition in bankruptcy against your petitioner and said Bolivar Owen, was filed in this court on the 30th day of November, 1869. That a hearing was had and an adjudication of bankruptcy entered on said petition on December 10, 1869. That on December 28, 1869, your petitioner and said Owen filed their schedules as required by law. That on January 18, 1870, Charles Green was elected and appointed assignee in bankruptcy of said Owen and Murrin as partners and individually. That Sarah E. B. Murrin was the wife of your petitioner, James Murrin; and that by marriage settlement made previous to their intermarriage, all the property and estate of said Sarah was settled and secured to her own separate use and behoof, so that the said James had no right or interest therein, nor title nor claim thereto, nor to any portion thereof. That said separate estate was large in amount and of great value. That on March 17, 1869, the said Sarah made application to the Penn Mutual Life Insurance Company, doing business in this state, for an insurance upon her own life in the sum of five thousand dollars, payable upon her death, upon proper proof, to her husband, the said James Murrin. That upon said application said company issued to said Sarah a policy of insurance upon her life, in consideration of the payment by her of the annual premium of one hundred seventy-seven fifty-hundredths dollars, payable one-half in cash and one-half by note bearing interest at six per cent. payable in advance on or before the 26th April in each year during the continuance of the policy. That said Sarah, out of her own funds, paid the premiums required in cash and also the interest upon the notes for the years 1869, 1870, 1871 in advance. That the said Sarah died on the 19th day of January, 1872. That your petitioner did not pay any of said premium sums, nor were the same paid out of any funds or property in which he had any interest legal or equitable, nor did he suppose that he had any interest or title to said policies either legal or equitable which could pass to his assignee, in bankruptcy, and for this reason he did not enter said policy in his schedule of assets belonging to him at the date of the petition filed in this court. That after the death of the said Sarah and the money due on said policy became payable, the said Green, assignee in bankruptcy of your petitioner, and said Owen, applied to your petitioner, required him to set over said policy and the sum secured thereby to him as assignee; and your petitioner supposing that said demand was legal did give to said Green an order for the payment of the sum due upon said policy as follows:

"'Policy No. 9,199, on life of Sarah E. B. Murrin, I, James Murrin, the person in whose favor the above policy was issued, make no claim for the sum thereby insured, or any part thereof, or any interest therein, and do request and direct the Penn Mutual Life Insurance Company to pay the same to Charles Green, my assignee in bankruptcy, who is entitled to the amount. Witness my hand and seal the 7th day of May, 1872. James Murrin. (Seal).'

"And the said Green, as assignee by suit at law in the St. Louis circuit court, recovered judgment against such company on December 11, 1872, and said judgment for the sum of $4,933.05 was duly satisfied and paid to said Green on the 26th day of December, 1872."

Precisely the same allegations are made in respect to another policy issued to the said Sarah by the Connecticut Life Insurance Company on the 29th day of April, 1869, for the sum of $5,000 payable at her death, to the petitioner, her husband, upon which the said Green as assignee, collected May 11, 1872, the sum of $4,948.57. The petition then continues:

"Your petitioner further represents, that the orders for collection of the amounts due upon said policy were without consideration; that your petitioner had no title or interest legal or equitable in said policies on the 30th November, 1869, the date of the filing of the petition in bankruptcy, which could pass to his assignee by virtue of the act of congress to establish a uniform system of bankruptcy throughout the United States, and he is informed by counsel and believes that the sums of money collected by said Green upon said policies belong to your petitioner and to his creditors, becoming such since the filing of said petition in bankruptcy. In consideration of the premises, he prays that said Charles Green, as assignee, may be made to pay over to your petitioner the said sums of $4,933.05 and $4,948.57, less the costs, charges, and expenses by him incurred in collecting the same, and that your petitioner may have such other and further relief as to the court may seem meet."

Lackland, Martin & Lackland, for assignee.
C. C. Whittelsey, for petitioner.

DILLON, Circuit Judge. The wife of the petitioner being possessed of a separate estate, secured to her by an antenuptial marriage settlement, applied in the spring of 1869 for two policies of insurance of $5,000 each, upon her life, payable upon her death to her husband. They were issued accordingly, and she paid the premiums for one year, one-half in cash, and one-half by note. Before the year expired her husband was adjudicated a bankrupt. Out of her own estate she paid the premiums for the two following years, 1870 and 1871, and before the next premium fell due she died. The question is, whether the assignee as against the bankrupt, is en-

titled, for the benefit of the estate, to the proceeds of the policies. ·The assignee does not claim that his right is strengthened by reason of having obtained, in the manner stated, the actual possession of the proceeds, and the only contest is as to the respective legal or equitable right of the assignee and bankrupt thereto.

Counsel on both sides, in their well considered briefs, have argued many points which, though pertaining to the general subject of life policies for the benefit of others. are, nevertheless, not necessarily involved in the decision of the case.

The counsel for the assignee claims that at the date of the bankruptcy of the husband, November 30, 1869, the husband had a right of property in the policy (which it is contended is a chose in action) of such a nature that it vested in the assignee by virtue of the adjudication in bankruptcy. Bankrupt Act, § 14 [14 Stat. 522]. Under this section, property and rights which are acquired by the bankrupt after the commencement of the proceedings in bankruptcy do not vest in the assignee; and to make good his claim the assignee must show that the right to the benefit of the policy was one which not only existed in the husband at the time he was proceeded against in bankruptcy, but is one of such a nature as to vest in the assignee as of that time, by virtue of the provisions of the bankrupt act. This act should receive such a construction as accords with its well known purpose, which is, that if an insolvent debtor will surrender all his property (not exempt) for distribution among his creditors, he may, on the terms provided in the act, have his discharge. If the wife's death had happened before the bankruptcy, there being no statute protecting the husband's rights under the policy, the right to collect and hold the money would, it may be admitted, pass to the assignee. But her death did not happen until over two years afterward, during which time the wife continued to pay the premiums. It is admitted that she could not have been compelled to pay them, either by the husband, or by the assignee. Her payment of them proceeded purely from her bounty. It is certain, to a practical intent, that if she had not paid the subsequent premiums, the first payment, made before the bankruptcy, would have been of no benefit, either to the assignee or to the husband, for she did not die during the year. It is also certain, to a practical intent, that had the last premium not been paid, there would have been no proceeds here about which to litigate. Her intention, her object, in making these payments, in virtue of which the policy was kept in esse, must have been to make provision for her husband; and what equity, let me ask, have creditors. or the assignee representing them, to thwart the purpose which she had in view, and for which she paid her money—money to which they had no claim? The assignee. if it be conceded that he could have done so for the benefit of the estate, which I do not admit nor decide, took no steps to pay the premiums, but asks the benefit of those paid by the wife. It is inconceivable that she made, or intended to make, the payments for the benefit of the assignee, and she doubtless died in the confident belief that she had made provision for her husband.

Without discussing the questions which have been argued at the bar as to the nature and extent, before the death occurs, of the interest of a person designated by the bounty of another as the one to whom a policy is ultimately to be paid, I am quite confident that the husband, at the time of his bankruptcy, had no such interest in these policies as to give the assignee the right to retain their proceeds against the manifest intention and purpose of the wife.

NOTE. Right of payee or beneficiary in a life policy: See Clark v. Durand. 12 Wis. 223; Kerman v. Howard, 23 Wis., 108; Godsal v. Webb, 2 Keen, 99.

See, and compare, Chapin v. Fellows, 36

Conn. 132; Lemon v. Phoenix Mut. Life Ins. Co., 38 Conn. 294; Ruppert v. Union Mut. Ins. Co., 7 Rob. (N. Y.) 155; Glendale Woolen Co. v. Protection Ins. Co., 21 Conn. 37; Gould v. Emerson, 99 Mass. 154; West v. Reid, 2 Hare, 251; Burridge v. Row, 1 Young & C. Ch. 183; Triston v. Hardey, 14 Beav. 232; Connecticut Mut. Life Ins. Co. v. Burroughs, 34 Conn. 305; Burroughs v. State Mut. Life Assur. Co., 97 Mass. 359; Swan v. Snow, 11 Allen, 224; Wason v. Colburn, 99 Mass. 342; McAllister v. New England Mut. Life Ins. Co., 101 Mass. 558; Drysdale v. Piggott, 8 De Gex, M. & G. 546; Johnson v. Swire, 3 Giff. 194.