MARY FRANK, Respondent, *v.* THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK et al., Appellants.

An assignment, by a married woman, of a policy of insurance for her benefit upon the life of her husband, made prior to the passage of the acts authorizing such an assignment (Chap. 821, Laws of 1873 ; chap. 248, Laws of 1879), is voidable at her option ; and this although the premiums on the policy were paid by her out of her separate estate, and although no reference is made in the policy to the statute (Chap. 59, Laws of 1840), authorizing the issuing of such policies. The non-assignability of the policy did not depend upon the question whether the premiums were paid by the husband, the wife, or a third person.

Where, however, such an assignment was made by the wife, and after the thirty days' notice of a premium falling due, required by the act of 1876 (Chap. 341, Laws of 1876), had been given to her, the assignee surrendered the policy to the company, and such premium was not paid or tendered to the company, and no subsequent premiums were paid or tendered by her. *Held,* that the policy was forfeited, under the condition therein declaring it void, if premiums should not be paid when

Statement of case.

due; that as between her and the company she was placed in no better position in this respect by her assignment of the policy and its surrender, than if she had retained it; also the facts that when the policy was surrendered, the company attached to it the assignee's receipt for the sum paid him, stamped on the policy the word " paid," and retained it in its possession, did not amount to a conversion of the policy and did not prevent the assured, had she desired to avoid the assignment, from so notifying the company or tendering the premiums as they fell due.

*Whitehead* v. *N. Y. M. L. Ins. Co.* (*ante*, p. 143), distinguished.

But *held*, that the wife could maintain an action as for money had and received against the assignee to recover the amount received by him on such surrender, less the premiums paid by him, with interest; that her right to avoid the assignment existed as well after as before the surrender, and that an action against him was a sufficient election to avoid the assignment and adopt his act in receiving the avails of the policy.

The policy was assigned by the wife in 1875. In 1876 the assignee assigned it, with her consent, to another, who surrendered it for a sum paid. This action was brought in 1881, among other things, to recover of the second assignee the amount so received less premiums paid by him. *Held*, that the delay in making the election to avoid the assignment did not forfeit her right so to do, as it was insufficient to bar her claim under the statute of limitations.

Defendant D., the second assignee, offered evidence to the effect that, when he paid the premium in 1876, the secretary of the insurance company informed him that the policy had lapsed, but that if he would pay the premiums due, the company would revive the policy for his benefit alone. *Held*, that the evidence was properly excluded; that the policy could not be revived and at the same time converted into an insurance in favor of D. only; that, if the policy was forfeited and the forfeiture waived, the assured was entitled to the benefits of the waiver and revival.

(Argued January 26, 1886; decided April 20, 1886.)

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made at the January term, 1884, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.

This action was brought by plaintiff, a married woman, to recover the surrender value of a policy of insurance issued by the defendant company to plaintiff on the life of her husband in 1869, or for a judgment requiring the company to issue a paid-up policy. The policy was assigned by plaintiff in 1875

to one Kopfer who, in 1876, with the assent of plaintiff, assigned it to defendant Demond; the latter, in January, 1877, surrendered the policy to the company, receiving therefor the sum of $2,970.42.

The further material facts are stated in the opinion.

*Julien T. Davies* for the Mutual Life Insurance Company, appellant. The policy was not taken out under the statute of 1840, as amended, and as the policy is a common-law one, the assignments made by the plaintiff are valid and binding on her. (*Whitehead* v. *N. Y. L. I. Co.*, 33 Hun, 429; *Brummer* v. *Cohn*, 9 Daly, 39, 46; 86 N. Y. 11, 15; *Smillie* v. *Quinn*, 90 id. 492, 495; 25 Hun, 334; *Olmsted* v. *Keyes*, 85 N. Y. 605; *Burrough* v. *Conn. L. I. Co.*, 34 Conn. 305, 314; *Barry* v. *Equit. I. Co.*, 59 N. Y. 593; *Wilson* v. *Lawrence*, 13 Hun, 241, 593; *Kupfer* v. *Frank*, 4 Civ. Pro. 54; *Moore* v. *Met. Bk.*, 54 N. Y. 41.) The plaintiff herself could have lawfully surrendered the policy to the company and discharged it from further liability. (Sedgwick on Stat. and Const. Law, 153; *In re Com'rs Cent. Park*, 50 N. Y. 497; *The Cherokee Tobacco*, 11 Wall. 616; *Excelsior Petr. Co.* v. *Lacey*, 63 N. Y. 422; *Ross* v. *Wigg*, 36 Hun, 111; *In re Swan*, 33 id. 203.) She could confer upon another person the right to surrender it for her and as her agent, and her assignment must be construed, as to this defendant, as conferring this power. (*Robinson* v. *Mut. Benefit Ins. Co.*, 16 Blatchf. 194.) If the assignment was void, the rights and duties of the parties to the contract remained as they were before the assignment. (*Leonard* v. *Clinton*, 26 Hun, 290; *Bloomingdale* v. *Lisburger*, 24 id. 350; *Whitehead* v. *N. Y. L. I. Co.*, 63 How. 395; *S. C.*, 33 Hun, 425; *Pilcher* v. *N. Y. L. I. Co.*, 33 La. Ann. 422; *Herrick* v. *Nat. L. I. Co.*, 5 Ins. L. J. 80.) The plaintiff lost all rights created by the policy, by its lapse for the non-payment of the premium due January 21, 1877. (*Smillie* v. *Quinn*, 90 N. Y. 497.) The plaintiff cannot be allowed to question the assignments, in order to enable her to sue for an alleged conversion. (*Smillie* v. *Quinn*, 90 N. Y. 335; *Barron* v. *Brummer*, 3

N. E. Rep'r, 474.) The plaintiff can only recover judgment in any event against Demond alone for money had and received. (*Gray* v. *Palmer*, 2 Rob. 500 ; 41 N. Y. 620.) Even if the plaintiff has the right to avoid the assignments and every thing done under them, this defendant was not guilty of a conversion. (Pollock on Ins. 8 ; *Cary* v. *Hotaling*, 1 Hill, 311 ; *Schroeppel* v. *Corning*, 5 Denio, 236 ; *Broughton* v. *Bruce*, 20 Wend. 234 ; *Stafford* v. *Raaf*, 9 Cow. 626 ; *Young* v. *Billiter*, 30 L. J. [N. S.] 153 ; 25 L. J. [N. S.] Q. B. 172, 174.) Under the rules governing the measure of damages, plaintiff could recover against the company only nominal damages, even if a case of conversion is made out against this defendant. (*Baker* v. *Drake*, 53 N. Y. 211 ; *Gruman* v. *Smith*, 81 id. 25 ; *Colt* v. *Owens*, 90 id. 370 ; *Devlin* v. *Pike*, 5 Daly, 85 ; *Stevens* v. *Low*, 2 Hill, 132 ; *Wuesthoff* v. *Germania Life*, 20 J. & S. 208.)

*John H. V. Arnold* for George W. Demond, appell.nt. Demond took the absolute legal title to the policy with plaintiff's assent, subject only to her right of disaffirmance, and that right might be barred by the statute of limitations. (*Schroeppel* v. *Corning*, 5 Denio, 236.) The custody of the policy in Demond or in the company did not affect or impair plaintiff's rights, nor could any delivery or surrender from one to the other affect or impair them. (*Douglass* v. *Knick. L. Ins. Co.*, 83 N. Y. 504 ; *Knox* v. *N. Y. L. Ins. Co.*, 104 U. S. 88.) If there has been any loss to plaintiff, it has not occurred through any thing Demond or the company did, but through her own neglect to pay premiums. (*Dickinson* v. *Dudley*, 17 Hun, 572 ; *Att'y-Gen'l* v. *Guardian L. Ins. Co.*, 14 Week. Dig. 328 ; *Thayer* v. *Manley*, 73 N. Y. 305.) She cannot recover the amount received by Demond as money had and received to her use, for that money never belonged to her and was not paid to him for her or for her benefit. She cannot claim that the surrender was invalid, and at the same time claim the moneys received for it. (*Patrick* v. *Metcalf*, 37 N. Y. 333 ; *Butterworth* v. *Gould*, 41 id. 450 ; *Osby* v. *Conant*, 5 Lans. 310 ; *Rowe* v. *Bk. of Auburn*, 51 N. Y. 674 ; *Hathaway* v. *Town*, 54 id. 655.)

*A. R. Dyett* for respondent.    The policy was not assignable by Mrs. Frank under any circumstances or for any purpose. (Laws of 1840, chap. 80; amended by Laws of 1858, chap. 187; Laws of 1862, chap. 70; Laws of 1866, chap. 656, § 2; Laws of 1870, chap. 277; *Eadie* v. *Slimmon*, 26 N. Y. 9; *Brummer* v. *Cohen*, 86 id. 11, 14, 15, 17; *Mut. L. Ins. Co.* v. *Terry*, 62 How. 325; *Wilson* v. *Lawrence*, 13 Hun, 238; affirmed, 86 N. Y. 585; *DeJonge* v. *Goldsmith*, id. 614; *Barry* v. *Brune*, 71 id. 261; *Barry* v. *Equit. L. Ins. Co.*, 59 id. 587.) Both of the defendants were guilty of a conversion of the policy. (*Schroeppell* v. *Corning*, 5 Denio, 236; *S. C.*, 6 N. Y. 107; *Boyce* v. *Brockway*, 31 id. 490; *Kingman* v. *Pierce*, 17 Mass. 247; *Donnell* v. *Thompson*, 13 Ala. 440; *Bissell* v. *Drake*, 19 Johns. 66; 6 Wend. 609; 5 Denio, 240, 244, 528, 532; 22 Wend. 285; 31 N. Y. 493; 9 Bosw. 322, 326; 6 Abb. [N. S.] 209, 214; 3 N. Y. 506; 39 id. 441; *Holbrook* v. *Wright*, 24 Wend. 169, 179, 180; *Murray* v. *Burling*, 10 Johns. 172; *Connah* v. *Hale*, 23 Wend. 462; *Bristol* v. *Burt*, 7 Johns. 254; *Wilson* v. *Lawrence*, 13 Hun, 240; 39 N. Y. 441; 40 id. 314.) The policy being a non-negotiable chose in action, Demond took only his assignor's title and the company took only Demond's, subject to all the rights and equities between Demond and the plaintiff, and even the latent equities of third persons. (*Trustees of Union College* v. *Wheeler*, 61 N. Y. [DWIGHT, C.] 104 *et seq.*; *Greene* v. *Warwick*, 64 N. Y. 220, 224; *Spraights* v. *Hawley*, 39 id. 441; *Ballard* v. *Burgett*, 40 id. 314.) In every case of conversion the plaintiff's title remains unaffected, and he may sue any other person liable for the same conversion. It is only when the judgment is paid that the title passes. (8 Cow. 43-45; 31 N. Y. 210, 215; 73 id. 305, 309.) As pledgee Demond could only collect or enforce the policy. (*Wheeler* v. *Newbold*, 16 N. Y. 392, 398.) And any other disposition of it, without first demanding the debt and giving the plaintiff notice to redeem, was a conversion. (*Farwell* v. *Imp. & Trad. Bk.*, 90 N. Y. 490; *Baker* v. *Drake*, 66 id. 518.) It is no defense to an action for a wrong that there is another party who is equally guilty. (*Daven-*

*port* v. *Ruckman*, 37 N. Y. 568, 574; *Low* v. *Mumford,* 14 Johns. 426; *Creed* v. *Hartman*, 8 Bosw. 128; *Wehle* v. *Butler*, 61 N. Y. 247; 8 Cow. 43–45.) As the "surrender and delivery" of the policy was without authority of the plaintiff, no title to or interest in the policy passed to or was acquired by the company, and the plaintiff's title to it remained unaffected. (8 Cow. 43–45; 31 N. Y. 215.) No payment or tender by the plaintiff of the premium falling due January 21, 1877, was necessary. By the cancellation, surrender, stamping as "paid," and payment by the company to Demond of the surrender value of January ninth, and the subsequent retention in their possession of the policy by the company, they had selected Demond as the only person whom they recognized, and it would have been a vain and absurd thing afterward to tender payment of that premium. (*Robinson* v. *Nat. Bk. of New Berne*, 95 N. Y. 637, 643, 644.) No demand of the policy or the money upon either of the defendants was necessary before bringing this action. (*Pease* v. *Smith*, 61 N. Y. 477; *Connah* v. *Hale*, 23 Wend. 462, 466; *Sharp* v. *Whipple*, 1 Bosw. 557; *Trow* v. *Shannon*, 78 N. Y. 453; *Robinson* v. *Nat. Bk. of New Berne*, 95 id. 637, 643, 644; *Davidson* v. *Donadi*, 2 E. D. Smith, 121; 6 Hun, 529; 4 Daly, 223; 5 N. Y. Weekly Dig. 486; 5 Denio, 236, 240, 242, 250, 251; 9 Bosw. 322, 326.) The act of 1840 does not make it necessary that the husband should pay the premiums. (Act of 1840, as amended by Laws of 1858, chap. 187; Laws of 1866, chap. 656; Laws of 1870, chap. 277; *Wilson* v. *Lawrence*, 76 N. Y. 585; S. C., 13 Hun, 238, 241; *Brummer* v. *Cohen*, 86 N. Y. 11; *DeJonge* v. *Goldsmith*, 86 id. 614; *Barry* v. *Equit. L. Ins. Co.*, 59 id. 587; *Eadie* v. *Slimmon*, 26 id. 9; *Mut. L. Ins. Co.* v. *Terry*, 62 How. 325; *Barry* v. *Brune*, 71 N. Y. 261; *Smillie* v. *Quinn*, 90 id. 492.)

RAPALLO, J. We are of opinion that the policy issued by the defendant company to the plaintiff on the life of her husband, on the 21st of January, 1869, was, under the decision of this court in *Brummer* v. *Cohn* (86 N. Y. 11), and preceding

cases therein referred to, not assignable by her, and that she had the right to avoid the assignment made by her to Martin Kupfer on the 16th of September, 1875. That, consequently, the subsequent assignment made by Kupfer, with her consent, on the 17th of August, 1876, to the defendant Demond, and the surrender by him to the company on the 9th of January, 1877, were not binding upon her.

The learned counsel for the insurance company contended that the policy was not taken out under the act of 1840, and was not within the decisions holding such policies to be non-assignable, for the reasons that the contract of insurance was with the wife and that she paid the first premium, as appears from the recital in the policy, and that the husband paid none of the premiums out of his own funds.

There is no finding that the premiums, subsequent to the first, were paid by the wife, or that they were not paid by the husband, nor was there any request to find such facts. The only finding with respect to who paid the premiums, other than the last two paid, is that the policy was issued to the plaintiff in consideration of the sum of $178.50, duly paid to the company by the plaintiff, and of the quarter annual payment of a like amount on certain days during the continuance of the policy.

The only evidence on that point on the trial, in addition to the recital in the policy, was the testimony of the plaintiff's husband, who stated that he paid the premiums himself for his wife up to April, 1876, but on cross-examination he said he could not recollect whether or not they were paid by his wife's father out of his own money. The premiums due in July and October, 1876, are found to have been paid by the defendant Demond.

The act of 1840 (Chap. 80) is not confined to cases where the premiums are paid by or out of the funds of the husband. As originally enacted it authorized any married woman to cause to be insured, for her sole use, the life of her husband, and provided that the amount of insurance when due should be payable to her, free from the claims of the representatives of

the husband or of any of his creditors, but that such exemption should not apply where the amount of premium annually paid should exceed $300. But by the act of 1858 (Chap. 187) this condition of the exemption was confined to cases where the premium, exceeding $300, was paid " out of the funds or property of the husband," clearly implying that the act contemplated their being paid from some other source; and by the act of 1877 (Chap. 277) the condition was further modified so as to provide merely that where the amount of premium paid out of the funds or property of the husband should exceed $500, the excess should inure to the benefit of the creditors of the husband. In *Eadie* v. *Slimmon* (26 N. Y. 9), the leading case upon this subject, and in most of the cases which have followed it, the same feature appears to which the counsel refer as taking the present case out of the principle of those cases. The policy in *Eadie* v. *Slimmon* recited the payment by the wife of the premium for the first year, and that recital does not appear to have been controverted in any manner, and in none of the cases in this court is the question whether the premium was paid by the husband or the wife treated as material.

In *Wilson* v. *Lawrence* (8 Hun, 593 ; *S. C.*, 13 id. 228, 241) it was deemed by the Supreme Court material to inquire by whom the premiums were paid. The policy contained the same recital, and, so far as appeared when the case first came before the court at General Term (8 Hun, 593), the wife had paid the premiums. On this ground the court held that the policy, being valid at common law, was not issued under the statute, and that her assignment of it to the plaintiff was good, to the extent of securing the repayment to her assignee of the sum paid by him on the assignment. On a new trial it was proved and found, notwithstanding the recital in the policy of the payment of the first premium by the wife, that in fact all the premiums had been paid by the husband, and on that ground the policy was held to be non-assignable. (*S. C.*, 13 Hun, 238, 241.) The judgment was affirmed in this court (*S. C.*, 76 N. Y. 585), but the supposed distinction was not considered here.

The argument of counsel is that inasmuch as at common

law the wife had an insurable interest in the life of her husband (a point which had not been decided by this court at the time of the decision in *Eadie* v. *Slimmon*), an insurance thereon for her benefit, where the premiums were paid out of her separate estate by her or her trustee, would be valid, and would be protected against the creditors of the husband, independently of the statute; therefore, that in such a case a policy taken out by her, especially where, as in this case, it contained no reference to the statute, was not taken out under the statute, and was assignable by her.

We think the court has gone too far in the other direction to justify it in establishing this distinction now. The rule that such policies were not assignable, was not derived from any provision of the statute, but was established by the decisions of the court, and has been steadily adhered to. In the case in which it was first promulgated (*Eadie* v. *Slimmon*, 26 N. Y. 9) the case discloses, as has already been stated, that the contract of the company was with the wife, and the first premium was paid by her, and the decision has been followed in many subsequent cases. In 1873 the doctrine of those cases was recognized by the legislature by conferring upon married women the power to assign their policies, when they had no children, on complying with certain formalities (Laws of 1873, chap. 341), and in 1879 full power to assign was conferred upon them without those conditions, provided the husband consented to the assignment. (Laws of 1879, chap. 248.) We are not disposed at this late date to introduce the distinction claimed, although it is sustained by forcible arguments.

It is further argued that inasmuch as it has been decided by this court in *Smillie* v. *Quinn* (90 N. Y. 492) that a policy taken out by a wife on the life of her husband is not liable, even for the debts of the wife, and the amount of premiums which may be paid otherwise than out of the funds of the husband is unlimited, a married woman having property might place such property beyond the reach of her own creditors by investing it in effecting insurance to an extravagant amount on the life of her husband. It seems from the report of the case

of *Smillie* v. *Quinn* in the Supreme Court (25 Hun, 334) that it was found as a fact that the premiums were paid with the funds of the husband, and that fact was made one of the grounds upon which that court held the proceeds of the policy not liable for the debts of the wife.  In this court (*S. C.,* 90 N. Y. 492) that circumstance is not relied upon, and the decision is placed upon the grounds that the wife alone had the right to avoid the assignment, and reclaim the policy, and that she could not be compelled to do so, and that a receiver appointed in a proceeding instituted by her judgment-creditors had no such right.  It was also held in that case that her assignment was not fraudulent as against her judgment creditors under the circumstances of that case.  But should such a case arise as is supposed in the argument of counsel, it would present questions which are not concluded by the decision in *Smillie* v. *Quinn,* and which are not presented in the case now before us.  It is sufficient to say that the non-assignability of such a policy at the time the assignment now in controversy was made, did not depend upon the question whether the premiums were paid by the husband or by the wife, or by a third person.  Since then all such policies have been made assignable by the wife with the consent of the husband.  (Laws of 1879, chap. 248.)

But although we hold that the plaintiff was protected by the principle established in *Eadie* v. *Slimmon,* and subsequent cases, and that the result was that she had the right to avoid her assignment and reclaim her policy, as is held in *Smillie* v. *Quinn* (90 N. Y. 492), it does not follow that she has established in this case any right of action against the defendant, the insurance company.  She certainly cannot claim under the policy, for she has failed to perform its conditions.  This was held by the court below, and, as we think, correctly.  The condition of the policy was that if the premiums thereon should not be paid when due, the policy should cease and determine. It is found by the trial court that the premium falling due on the 21st of January, 1877, was not, nor was any subsequent premium paid to the company, and that on the 21st of Janu-

ary, 1877, the policy and all the right of the plaintiff therein became lapsed and forfeited, and all payments thereon became forfeited to the company. It is also found that the thirty days' notice required by chapter 341 of the Laws of 1876 had been given by the company to the plaintiff. These facts preclude any recovery by her on the policy. As between her and the company she was placed in no better position in this respect by her assignment of the policy and its surrender by her assignee, than she would have been in if she had retained the policy. She had 'the right to avoid her assignment and reclaim her policy, and if she had tendered the premium to the company it would have been its duty to accept it. Nothing had been done to prevent that course being pursued. The fact is found that when the policy was surrendered to the company by the defendant Demond, the company attached to it his receipt for the sum paid him, and stamped on the back of the policy the words: "Paid January 9, 1877," and has ever since retained possession of the policy so canceled. There was nothing in all this which prevented the plaintiff, had she desired to avoid her assignment, from so notifying the company, and paying or tendering the premiums as they fell due, and, in the absence of such tender, it is not to be presumed that the company would have refused to accept them.

On these grounds the court below held that the plaintiff was not entitled to require the company to issue a paid-up policy pursuant to the provisions of the original policy, but found as a conclusion of law that the plaintiff was entitled to recover, both of the company and Demond, the sum of $2,979.42, with interest, less $357 for premiums paid by Demond, the balance being the amount paid by the company to Demond on the 9th of January, 1877, when he surrendered the policy.

In the conclusions of law set forth in the decision of the court, the ground of this recovery is not stated. There is no finding of the conversion of the policy by either Demond or the company, nor is there any finding or any allegation in the complaint, or any proof that it was ever demanded of either. The finding is that no demand was made of Demond. But in

the opinion of the learned trial judge he states that he holds the facts to be sufficient to render the defendants liable for a conversion of the plaintiff's property.

The complaint, after setting forth the policy and the assignment from the plaintiff to Kupfer as collateral security for a loan from him to the plaintiff's husband, and the assignment from Kupfer to the defendant Demond, alleges that Demond, in some manner unknown to the plaintiff, delivered up the policy to the company, who thereupon paid him therefor the sum of $2,970.42, and canceled the policy, and has ever since retained possession of the same so canceled. That the policy was not assignable by the plaintiff, who had no power to assign the same, and in law she was still entitled to the same and all benefit and advantage thereof as if she had never assigned the same to any one, and she demanded as relief judgment against the defendants for the sum of $5,333, or whatever sum might be the surrender-value of the policy, with interest from January 9, 1877, or that the company be adjudged to issue to her a paid-up policy as provided in the original policy.

Under this complaint, which sets forth a cause of action *ex contractu*, it is difficult to see how a recovery can be had for a cause of action *ex delicto*, or how in the face of the claim that the plaintiff is still entitled to the same benefit and advantage from the policy as if she had never assigned it, she can recover on the ground that either of the defendants has converted it.

But so far as the defendant, the insurance company, is concerned, there are further insuperable difficulties in the way of sustaining an action for conversion. In the first place, the possession of the policy by the defendant Demond was lawful until the plaintiff elected to avoid her assignment and reclaim her policy, and, until she did so reclaim it, neither of the parties was guilty of a wrong in holding it, and further, what was done by the company did not amount to a conversion.

The mere receipt of the policy from Demond, who stood in the place of her assignee, and the payment to him of the surrender value and marking the policy canceled, before any elec-

tion on her part to avoid the assignment, and retaining the policy in their possession, was no violation of her rights and did not impair them, as she herself avers in her complaint, in which she states that the policy is still in the possession of the company, and that she is entitled to the same benefit and advantage thereof as if she had never assigned it. The loss of her claim against the company is due, not to the surrender of the policy, or its cancellation, but to her failure to keep it alive by the payment of premiums, and this failure was in no manner attributable to the acts either of Demond or of the company.

It is in this respect that the present case differs decisively from *Whitehead* v. *N. Y. Mutual Ins. Co.,* recently decided.\* In that case we held that the non-payment of the premiums after the surrender of the policy, was occasioned in part by the wrongful act of the company in accepting a surrender from one having no authority to represent the assured, and that the insurance company participated with the husband in keeping the wife and children in ignorance of their rights. In the present case accepting the surrender was not, as we have said, a wrong to the plaintiff, nor was she in any manner kept in ignorance of her rights, or prevented by any act of the company from continuing her payments, nor had the company, in the case last cited, given to the assured the notice required by the act of 1876 (Chap. 341), and which was essential to entitle it to terminate the policy.

In the recent case of *Martin* v. *Tradesmen's Ins. Co.,* (101 N. Y. 498), we held that where an insurance company had issued a policy to M. & K. upon a steamboat, loss payable to the H. & H. Company who were mortgagees, and afterward at the request of a third person, presumed to represent the mortgagees, the company altered the policy by drawing a line through the names of M. & K., and interlining in their place the name of J. G. as the assured, and interlining after the names of the mortgagees, the words " to the extent of their interest and balance, if any, to I. G.," leaving, however, the original language of the policy legible, and returned the

---

\**Ante,* p. 143.

policy thus altered to the person who had requested the altera-
tion, the rights of the parties were not impaired, and they
could not maintain an action against the company as for a con-
version of the policy.   This decision shows that the mere
stamping of the policy " paid " in the present case, leaving it
in other respects in its original condition, did not impair the
rights of the plaintiff, and that she sustained no damage there-
from.

For these reasons, and there being no theory other than that
of conversion upon which the company can be held liable,
the judgment against the Mutual Life Insurance Company
should be reversed.

The cause of action against the defendant, Demond stands
upon a different footing.   We do not think that under the
pleadings a recovery in tort for a conversion can be sustained
against him, but they are properly framed to sustain an action
for money had and received, and the judgment against him
conforms to that theory, being for the precise sum received by
him from the company less the premiums paid by him with
interest.   He was in possession of the policy under a title
which, as we have already shown, was invalid and avoidable at
her option.   While so in possession and while the policy was
still in force, he surrendered it and received therefor the sum
for which judgment has been rendered against him.
Whether or not these acts constituted as to him a conversion
of the policy is immaterial, for even if they did, she could
waive the tort and adopt his acts as having been performed for
her benefit.   Her right to avoid the assignment could be ex-
ercised as well after as before his receipt of the avails of the
policy, and the bringing of this action against him was a suffi-
cient election to avoid the assignment and adopt his act in re-
ceiving the avails.   It is true that he paid for the assignment
from Kupfer in August, 1876, the amount which Kupfer had ad-
vanced in 1875, and which as is found went to the use of plain-
tiff's husband, and that the plaintiff slept upon her rights until
1881, when this action was brought, and she elected to repudi-
ate her acts on the faith of which the defendant advanced his

money.  But the period not being sufficient to bar her claim by the statute of limitations, we see no ground upon which we can deny to her the protection against her own acts which is afforded her by *Eadie* v. *Slimmon* and like cases.

The exception taken by the defendant Demond to the exclusion of evidence that in August, 1876, when he paid the premium due July 21, 1876, the secretary of the insurance company informed him that the policy had lapsed, but that if he, Demond, would pay the premiums already due, the company would revive the policy for his benefit alone, was not in our judgment well taken.  No new policy was issued to Demond, and the existing policy could not be revived and at the same time converted into an insurance in favor of Demond alone.  If it was forfeited and the acceptance of the premium from Demond was a waiver of the forfeiture and revival of the policy, the assured was entitled to the benefit of such waiver and revival.  But there was no proof that it had been forfeited at that time, as it does not appear that the thirty days' notice required by chapter 341 of the Laws of 1876, had then been given.  If the policy had been forfeited, a waiver of the forfeiture would necessarily inure to the benefit of whoever was entitled to the policy.

The judgment should be affirmed, with costs as to the defendant Demond, and reversed as to the defendant the Mutual Life Insurance Company of New York, and new trial granted, with costs to abide the event.

All concur.

Judgment accordingly.