In re DIACK.

(District Court, S. D. New York. April 13, 1900.)

1. BANKRUPTCY—ASSETS—ENDOWMENT POLICY.

Where an endowment policy of life insurance was made payable to the wife of the assured if he died during the term, or to himself if living at the expiration of the stipulated period, and was issued upon their joint application, and for several years before the bankruptcy of the husband the wife saved the policy from lapsing by paying the premiums out of her own money, *held*, that the bankrupt's interest in the surrender value of the policy, upon passing to his trustee, was subject to an equitable lien or right in the wife to be reimbursed for such proportion of the premiums paid by her as had gone to keep the policy alive for the benefit of the husband's interest.

2. SAME.

The wife not being obliged to surrender the policy or accept a paid-up policy unless she chose, *held* that, if she elected not to surrender, the bankrupt should be required to assign to his trustee his interest in the surrender value of the policy as of the date of the adjudication, after deducting the amount to be credited to the wife for premiums paid; and the sum so assigned, with interest, should be made payable out of the proceeds of the policy upon its maturity or prior payment; or the policy be assigned to the wife, if desired, on payment of that sum.

In Bankruptcy. On review of decision of referee in bankruptcy.

Charles N. Morgan, for petitioner.

Black, Olcott, Gruber & Bonynge, opposed.

BROWN, District Judge. The adjudication in bankruptcy in the above case was made on March 24, 1899. An order having been subsequently made directing the bankrupt to assign to the trustee all his interest existing at the date of adjudication in an endowment policy upon the bankrupt's life, a petition was thereafter filed by his wife, Susan M. Diack, setting forth her own interest in the policy, and payment by her of various premiums thereon, in order to keep the policy alive, and asking that her interest as well as the bankrupt's interest in this policy be determined and her lien thereon protected.

Upon a reference of the petition to the referee in charge and his report thereon, it appears that an endowment policy was issued by the Equitable Life Assurance Society on June 23, 1892, for the sum of $15,000, payable 15 years thereafter to William Diack, on June 22, 1907,

"Should he then survive, or should he die before, then to his wife, Susan M. Diack, if living, if not, then to the said William Diack's executors, administrators or assigns."

The premiums, at first annual, were shortly afterwards made semiannual, in the sum of $568.35, payable on June 22d and December 22d of each year during the continuance of the policy. The applica-

tion for the policy was signed by both Mr. and Mrs. Diack. Mr. Diack paid the premiums until the latter part of 1896, when becoming embarrassed, he was unable to pay them, and they were thereafter paid by Mrs. Diack. Further facts appear in the following opinion of the referee:

"The evidence shows that the surrender value of the said policy of insurance on March 24, 1899, the date of the adjudication in bankruptcy, was $3,801, and that the value of Susan M. Diack's interest in said sum of $3,801 was $391, and the value of William Diack's interest in said sum was $3,410, leaving out of consideration any question of the claim of Susan M. Diack to be reimbursed for premiums paid by her. Mrs. Diack paid three premiums, of $568.35 each, one on December 22, 1896, one on June 22, 1897, and one on December 22, 1897, with her own money. On June 22, 1898, William Diack and Susan M. Diack gave their joint note to the American Loan & Deposit Company for $1,700, and delivered to said American Loan & Deposit Company the said policy of insurance as collateral security therefor, and the American Loan & Deposit Company paid to the Equitable Life Assurance Society the sum of $568.35 for the premium due June 22, 1898, and paid the balance of said $1,700 to Susan M. Diack. Susan M. Diack subsequently made two further payments of $568.35, due December 22, 1898, and June 22, 1899, with her own money.

"From these facts in my opinion, if Mr. and Mrs. Diack had consented to surrender the policy on March 24, 1899, the date of the adjudication in bankruptcy, there would have been payable to the American Loan & Deposit Company in the first instance, out of the $3,801, which was the surrender value of the policy, the sum of $1,700, leaving $2,101. The interest of Susan M. Diack in this amount was $391/3801$ or $216.12, and the interest of William Diack in said sum of $2,101 was $3410/3801$, or $1,884.88.

"The petitioner claims, as I understand, that this policy is within the protection of the statute of New York relating to insurances for the benefit of married women, relying on the cases of Brummer v. Cohn, 86 N. Y. 11, and Miller v. Campbell, 140 N. Y. 457, 35 N. E. 651, which hold that in this state endowment policies, like the one in question, are covered by the provisions of the act; and that therefore the only interest of William Diack in this policy which his creditors can reach, and which therefore passes to his trustee in bankruptcy, is that portion of the surrender value of the policy which represents the insurance purchased by the part of each premium paid by William Diack, which exceeds $500. But I understand that this question has been decided in this case, and that it has been held that the interest of William Diack in this policy as it would be computed upon the surrender of the policy, irrespective of the question who paid the premiums, passes to his trustee in bankruptcy, as held in the cases of In re Steele (D. C.) 98 Fed. 78, and Anderson v. Butterly, 8 Ins. Law J. 79, and that the only question before me is, what amount should be deducted from the value of his interest by reason of the premiums which have been paid by Mrs. Diack.

"The counsel for the trustee claims that the payment of premiums by Susan M. Diack gave her no lien upon the policy or William Diack's interest therein.

"In my opinion this is strictly correct. Mr. Diack did not transfer any interest in the policy to Mrs. Diack when she paid the premiums, and there is no proof that there was any agreement between them that she should have a lien on his interest. The general rule is that a joint tenant of real estate or a person jointly interested with others in any way, in property of any kind, cannot make payments for the alleged benefit of the property, and thereby obtain a lien upon the property for reimbursement, without the agreement and assent of the other persons interested in the property (Mumford v. Brown, 6 Cow. 475; Scott v. Guernsey, 48 N. Y. 106; 1 Washb. Real Prop. [4th Ed.] 664); and this principle has been sometimes applied in reference to payments of premiums of insurance (Burridge v. Row, 1 Younge & C. Ch. 182; Leslie v. French, 23 Ch. Div. 552). But wherever a co-tenant or joint owner has made improvements or expended money for the benefit of property under such circumstances that it would be inequitable to allow the other persons interested in the property to receive their full interest in the property without reim-

bursement, courts of equity require such parties to make reimbursement out of the proceeds of the property. Taylor v. Baldwin, 10 Barb. 626; Ford v. Knapp, 102 N. Y. 135, 6 N. E. 283. This is not done upon the principle that one owner who acts without the agreement or assent of the other owners gains a lien upon the property for his advances, but stands upon the proposition that one who seeks equity must do equity (Ford v. Knapp, 102 N. Y. 135, 140, 6 N. E. 283); and this principle has frequently been applied in cases of persons who have paid premiums on life insurance policies and have thus kept the insurance alive, who were ultimately found not to be in fact entitled to receive the insurance money (Page v. Burnstine, 102 U. S. 664, 26 L. Ed. 268; In re Newland, 9 N. B. R. 62, Fed. Cas. No. 10,171; Weisert v. Muehl, 81 Ky. 336; In re Murrin, 2 Dill. 120, Fed. Cas. No. 9,968).

"It seems to me that this principle clearly applies in the case at bar. Mrs. Diack never would have paid these premiums for the benefit of her husband's creditors. Her payments kept the policy alive, and there is no equity in allowing the creditors to receive the value of her husband's interest in this policy without reimbursing her for the premiums which she has paid.

"The petitioner's counsel claims that William Diack was bound to pay all the premiums on this policy, and that for that reason Susan M. Diack is entitled to reimbursement for the premiums paid by her. On the other hand the trustee's counsel claims that Mr. Diack was under no more obligation to pay the premiums than Mrs. Diack, and that if Mrs. Diack is to be reimbursed for her payments, the payments made by Mr. Diack should also be taken into account. I think that under this policy neither William Diack nor Susan M. Diack was under any legal obligation to pay premiums. By the policy the Equitable Society agreed in consideration of the payment of the premium paid and of those to be paid, to insure the life of William Diack; but the policy does not contain any express agreement by Mr. Diack or Mrs. Diack or both to pay any premiums. If not paid when they matured, the only remedy of the Equitable Society was to have the policy lapse. Such a policy is usually taken out and the premiums paid by the husband; but both Mr. Diack and Mrs. Diack had such an interest in the policy that either alone had the right to pay the premiums. The case, in my opinion, does not hinge on the question who, if any one, was legally bound to pay the premiums. The real question here is between Mrs. Diack and Mr. Diack's creditors; and as between them I think that the equitable principle applies that before the creditors can take Mr. Diack's interest in this policy they should reimburse Mrs. Diack for the payments which kept it alive.

"The counsel for the trustee suggests that the court should order a paid-up policy to be issued, as of the date of the bankruptcy. But in my opinion Mrs. Diack cannot be compelled to take a paid-up policy without her consent. She has a right to have the policy kept alive, if she so elects.

"Geo. C. Holt, Special Commissioner.

"Dated April 4, 1900."

In most of the above I concur. It is immaterial here whether the lien of Mrs. Diack for the premiums paid by her be treated as a legal or as a merely equitable lien. In bankruptcy both alike are preserved. In my view Mrs. Diack, under the law of this state, from the moment the policy had any surrender value through the payment of premiums, became entitled by its terms to a contingent legal interest in it, which entitled her to pay the premiums upon it, if necessary, in order to prevent it from lapsing; and on a surrender of the policy, defeating its ultimate provisions, any such payments previously made by her would create in her favor an equitable lien or charge upon her husband's interest for the same proportion of those payments that her husband's interest in the surrender value of the policy bore to the whole surrender value.

The case is wholly different from that of Leslie v. French, 23 Ch. Div. 552, where the policy was an antenuptial policy belonging

wholly to the wife and never reduced to the husband's possession, though after marriage he paid the premiums on it, and having died before his wife, it was held that his estate had no lien upon it. Here the policy was applied for by both husband and wife; it belonged to them both, with different contingent interests according to the terms of the policy. When such a policy matures or becomes payable, according to its terms, doubtless neither could set up any claim or lien upon the proceeds different from the terms of the policy itself, in consequence of the mere fact that one or the other had paid the premiums. But here the question is different, viz., what, as against the husband and his creditors, should be deemed to be the equitable interest of the wife in its surrender value, upon a cancellation of the policy and an interruption of its terms and provisions as of the date of the adjudication? On such a question, the conclusion of the referee seems to me certainly just and correct.

The policy, it appears, is still held by the trust company, which advanced the $1,700 upon the note of Mr. and Mrs. Diack with the policy as collateral. The bankrupt has been discharged; but as Mrs. Diack is in business and is personally liable for this $1,700, and apparently solvent, this pledge of the policy may for present purposes be disregarded.

Up to the time of the adjudication, therefore, on March 24, 1899, the five payments of premium made by Mrs. Diack amounted, with interest, to $3,055.85. Mrs. Diack should be deemed, however, to have paid $391/3801$ of this amount for the protection of her own interest, which is about $322. This leaves $2,734 as the amount of her advances for the protection of her husband's share of $3,410 in the surrender value, and equitably chargeable thereon. The difference of $676 represents, so near as I can determine it, the value of the bankrupt's share of the surrender value of the policy at the time of the adjudication; and the residue of $3,125 represents the equitable interest of Mrs. Diack, upon the payment by her of the above-named sum of $1,700. See, however, In re Steele (D. C.) 98 Fed. 78, 3 Am. Bankr. Rep. 549; In re Buelow (D. C.) 98 Fed. 86, 3 Am. Bankr. Rep. 389.

As the trustee cannot require Mrs. Diack either to accept a paid-up policy, or to suffer the policy to lapse and thus obtain immediate payment of the surrender value, the bankrupt should be required, unless Mrs. Diack shall elect to surrender, to execute an assignment to the trustee of his interest in the surrender value of the policy as of the date of adjudication to the extent of $676; and that sum with interest from March 24, 1899, should be made payable out of the proceeds of the policy when it matures, or whenever sooner paid. An order may be entered accordingly.

## Additional Opinion.

### (May 4, 1900.)

Upon further hearing as to the amount of Mrs. Diack's equitable lien, it is urged in behalf of the trustee that the surrender value should be divided between the bankrupt and his wife in proportion

to the whole amount of premiums paid by each with interest thereon, which would result in about two to one in favor of the bankrupt. On the part of Mrs. Diack, it is urged that the policy should be deemed wholly for the benefit of the wife, to the extent that would be covered by an annual premium of $500, that being the statutory limit authorized by the law of this state to be applied to policies for the wife's benefit as against creditors; and reckoning the advances of Mrs. Diack per year in excess of $500 as advances made for the husband's interest alone, it is computed that there would remain of the husband's share of the surrender value after repaying the wife's advances thereon, only $350.30.

I cannot sustain either contention. The policy in this case differs from all those in the cases cited of Brummer v. Cohn, 86 N. Y. 11, Frank v. Insurance Co., 102 N. Y. 266, 6 N. E. 667, Whitehead v. Insurance Co., 102 N. Y. 144, 6 N. E. 267, and Anderson v. Goldsmidt, 103 N. Y. 617, 9 N. E. 495, in the fact that in all those cases the policy was in express terms for the sole benefit of the wife and her children or heirs; whereas in the present case the policy by its terms is mainly for the individual benefit of the bankrupt and of his executors and administrators. It is only in the single event that the husband dies prior to the expiration of the endowment period, and the wife survives him, that she is to receive any part of the money payable under the policy. In that respect the present policy is the same as was one of the policies in Miller v. Campbell, 140 N. Y. 457, 461, 35 N. E. 651. But in that case the court recognizes that two independent elements exist in a policy of this kind, namely, the endowment interest for the husband's benefit if he survives the endowment period, and the wife's interest if he does not, both interests being subject to the contingencies of death or survivorship. Such a policy was there held to be wholly unassignable by the wife prior to the enabling act of 1879, but assignable by the husband so far as respects his interest or right in the policy; so that when the case was reached upon appeal, it appearing that the husband had joined with the wife in the assignment of the policy to creditors many years before and had survived the endowment period, it was held that the wife's interest had wholly ceased and that the creditors' title to the policy through the husband's transfer was complete.

The decision previously made in this case is in precise accord with this view of the double nature of this policy. It cannot be treated as a policy for the sole benefit of the wife to the extent that an annual premium of $500 would cover, because the policy is a different kind of endowment policy, and mainly for the husband's benefit; its terms are controlling and do not admit of any such construction as contended for. The husband or the wife might have taken out a policy for the wife's sole benefit, but they did not do so, and I cannot treat it as other than it is. The policy is not a policy for the benefit of the wife under the statute, except to the partial and limited extent above stated. As such it is within the statutory limits, as respects the husband's payment of premiums, and by the payment of a level or average premium a property interest of the wife in the policy itself in the reserve has been created, which she was entitled to protect and pre-

serve, when her husband could no longer pay the premiums. To protect her contingent interest in the policy she was bound to pay the whole premium, since it was indivisible. By doing so, she at the same time protected her husband's much larger interest in the policy, and she should therefore be allowed a lien for so much of her payments as inured to his benefit and not to her own.

The further testimony taken does not change the relative proportions of the surrender value at the date of the adjudication of bankruptcy as previously stated, but confirms it; and, therefore, the result previously arrived at seems to me correct. It is the wife's advances alone that have preserved the policy from lapsing; and so much of her payments as inured to her husband's benefit, should, therefore, be allowed to her out of his share as computed at the date of the adjudication, without regard to the amount of premiums previously paid by him. Upon the payment by Mrs. Diack of the sum previously fixed with interest, the trustee will be directed to transfer his interest in the policy to her, should that be desired.