## GEOFFROY v. GILBERT et al.

(Supreme Court, Appellate Division, First Department. May 1, 1896.)

1. LIFE INSURANCE—INSURABLE INTEREST.
   A minor daughter has an insurable interest in the life of her father.

2. SAME—VESTED INTEREST.
   Where a father procures a life insurance policy for the benefit of his daughter, she acquires a vested interest in the policy on its delivery to him.

3. SAME—BENEFICIARIES.

     A life insurance policy, payable to the insured's daughter or her legal representatives, passes, on the death of the daughter prior to the death of the father, to the administrator of the daughter.

Appeal from special term, New York county.

Action by Nicolas Geoffroy, as administrator of Jennie Clarkson Geoffroy, deceased, against Alexander Gilbert and Lewis V. F. Randolph, executors of William R. Clarkson, deceased, and others. From a judgment entered on a decision of the special term, plaintiff appeals. Reversed, and judgment rendered for plaintiff.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, O'BRIEN, and INGRAHAM, JJ.

B. Crosby, for appellant.
John S. Durand, for respondents.

RUMSEY, J. In the month of February, 1868, William R. Clarkson procured from the New York Life Insurance Company a policy of insurance on his life for the sum of $10,000, which sum the life insurance company agreed to pay on the occasion of his death to Jennie Clarkson or her legal representatives. The consideration for the policy was expressed in it to be the sum of $724.60, "paid by William R. Clarkson for the benefit of his daughter, Jennie Clarkson." William R. Clarkson was a merchant, residing in Plainfield, N. J. His age at the time this policy was taken out does not appear. Jennie Clarkson was his only daughter, and was, at the time the policy was bought, four years of age. At the age of 26 years she married the plaintiff, and died a year or so afterwards, and on the 27th of June, 1891, her father surviving her. He lived until the 16th day of March, 1895, when he died. Geoffroy, the plaintiff, was appointed the administrator of his wife, the daughter of William R. Clarkson, and the present defendants were the executors of William R. Clarkson, by his will. At the time of his death Mr. Clarkson left his wife surviving him, having no children except Jennie Clarkson. After Mr. Clarkson's death, the plaintiff made the proper proof to entitle him to the payment of the sum agreed to be paid by the policy, but he was unable to produce the policy itself, which was in the possession of the executors of Mr. Clarkson, and the New York Life Insurance Company declined to pay until the policy was surrendered, which Mr. Clarkson's executors refused to do. The plaintiff thereupon brought this action to obtain a judgment requiring the executors of William R. Clarkson to deliver up the policy, and that the life insurance company thereupon pay the amount of it to him. The Jennie Clarkson Baptist Orphanage was made a party defendant because it claimed to be a legatee under the will of William R. Clarkson, deceased. The New York Life Insurance Company paid the money into court, and the action was discontinued as to it. Upon the trial at special term the court held that the policy was payable to the executors of William R. Clarkson, and directed a judgment that the complaint be dismissed, and that the

money in court be paid to the defendants, executors of William R. Clarkson. From the judgment entered upon that decision, this appeal is taken.

The trial court held that the words "her legal representatives" did not have their usual and ordinary meaning in this policy, but that they were to be construed as meaning "next of kin of Jennie Clarkson," and for that reason the plaintiff, who was her administrator, was not entitled to the amount of the policy. It is to be noticed that the policy recites that the consideration for it was paid by William R. Clarkson for the benefit of his daughter, Jennie Clarkson, and the company agreed to pay the amount of the policy, when it should become due, to Jennie Clarkson or her legal representatives. Jennie Clarkson, being the daughter of William R. Clarkson, and presumably dependent upon him for her support, had an insurable interest in the life of her father. For many years it had been held to be doubtful whether that was the law. The tendency of the decisions in the English courts was that a minor child had no insurable interest in the life of a father. Such continued to be the law for many years, but the tendency of the courts in that direction has been from exceeding strictness to considerable liberality. Whatever may have been the notion heretofore, the rule, we think, with regard to an insurable interest in the life of another, is well settled by Judge Field in the case of Warnock v. Davis, 104 U. S. 775. At page 779 he says:

"It may be stated generally, however, to be such an interest arising from the relations of the party obtaining the insurance, either as creditor of or surety for the assured, or from the ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life. It is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation, for a parent has an insurable interest in the life of his child and a child in the life of his parent; a husband, in the life of his wife, and a wife in the life of her husband. The natural affection in cases of this kind is considered as more powerful—as operating more efficaciously—to protect the life of the insured than any other consideration. But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured."

Such, we think, is a fair statement of the law on this subject as it exists to-day. There is no case in this country, to which we have been referred, in which it is held that a near relative, who may derive any benefit from the life of another, has not an insurable interest in that life. Indeed, the cases are all to the contrary. Lord v. Dall, 12 Mass. 115; Loomis v. Insurance Co., 6 Gray, 396; Insurance Co. v. Kane, 81 Pa. St. 154. In the case last cited it was held expressly that a child had an insurable interest in the life of a parent. As Jennie Clarkson had an insurable interest in her father's life, the policy taken out for her benefit undoubtedly vested in her an absolute interest, of which she could not be deprived during her life. The case of Olmsted v. Keyes, 85 N. Y. 593, seems to be conclusive on that point. In that case a life insurance company had issued a policy of insurance on the life of Keyes to the

plaintiff, as trustee for Huldah Keyes, his wife. The policy was issued in 1846, and Huldah died intestate in 1857. Afterwards Keyes married again, and thereupon the plaintiff, at the direction of Keyes, assigned to the second wife all his interest as trustee in the policy. Upon the death of Keyes, the plaintiff and the second wife both laid claim to the proceeds of the policy. The court of appeals held that the first wife acquired, by the issuing of the policy of insurance to the trustee for her benefit, a vested interest therein; that she could have made a valid assignment of it to any person during her life, or that she could have disposed of the interest by will. It held further that, as she had not disposed of it, it vested in her husband at her death, by virtue of his right of survivorship, and his direction to the plaintiff passed the title in it to the second wife, who was, therefore, entitled to be paid the proceeds of the policy. The fact that the insurance was procured by the father for the benefit of the daughter does not diminish the right of the daughter. In such a case, where he procures a policy of insurance upon his life for the benefit of the daughter, he acts simply as her agent, and she acquires a vested interest in the policy at the moment of its delivery to him. Whitehead v. Insurance Co., 102 N. Y. 144, 6 N. E. 267. It makes no difference whether the policy be said to have been issued pursuant to the statute of 1840 (chapter 80, Laws 1840) and the laws amending that statute or not. If she had a vested interest in this policy, there was nothing in the case to show that it was divested by her death. As has often been held, and as this court has held in the case of Steinback v. Diepenbrock, recently decided, and reported in 1 App. Div. 417, 37 N. Y. Supp. 279, a valid policy of insurance is a mere chose in action, and passes, like any other chose in action, upon the death of the owner, to the person who is entitled to take his personal property. In this case the policy, by its terms, is made payable to Jennie Clarkson or her legal representatives. No different rules are to be applied in the construction of a policy of insurance than in any other contract. In that as in every contract the words are to be construed to have the ordinary meaning which is usually given to them in common parlance, unless facts are shown from which it is made to appear that some other meaning was intended to be given. The phrase "legal representatives" ordinarily means executors or administrators, and, in the absence of any proof requiring a different meaning to be given to that phrase, it must be thus construed. Sulz v. Association, 145 N. Y. 560, 40 N. E. 242. Where it is intended to give to the words used in a contract a different signification from that which they are ordinarily to receive, the burden lies upon the person who claims to change the meaning to show the facts which authorize that to be done. Unless some such facts are shown, they must receive the usual signification. Id. The respondent cites the case of Griswold v. Sawyer, 125 N. Y. 411, 26 N. E. 464, to sustain his contention that in this case the phrase "legal representatives" does not have its ordinary and usual meaning, but must receive another construction. In that case the court conceded the rule to

be as is laid down above; that those words ordinarily, and unless their meaning is explained and altered by the context, must be held to mean executors and administrators; and the court there lay hold of certain facts which were made to appear, from which they concluded that the words used in the policy which was there construed did not have the usual meaning which is given to them. But the facts of that case were very different from those of the case at bar. In that case, as the court held, it was a necessary inference from facts outside of the policy that the words did not have the meaning ordinarily to be given to them. In this case no facts were shown which would give to the court any power to put a different construction upon those words than their ordinary meaning. For that reason the case of Griswold v. Sawyer does not apply, and cannot control us in the construction of this policy. Here no facts are made to appear from which it could be inferred that the policy was taken out for any other person than the benefit of the daughter or her husband. The very fact that it was made payable to her legal representatives necessarily leads to the inference that it was to belong to her estate after her death. She was an only daughter. Her father was a well to do man, leaving an estate. In the nature of things, it was fair to infer that she would have children who would be dependent upon her, and would look to her estate for their support; and the provision that the policy should be made payable to her legal representatives must be accepted as a conclusive indication, as it seems to us, that the father, who paid the money and took out the policy for her benefit, intended that she should have it so absolutely that she could make any use of it that any other person could make of a valuable chose in action which belonged to her. But it is useless to speculate as to the intention of the father in taking out this policy upon any outside facts. It is sufficient to say that nothing has been shown which would warrant the court in giving to these words any other or different meaning from that which they ordinarily have in common use. For that reason the conclusion of the court below cannot be sustained, and the judgment must be reversed, and judgment ordered that the fund in court belong to the plaintiff, and that it shall be paid to him. The costs of the action and of this appeal should be paid by the defendant. All concur.