WILLIAM A. BRADSHAW et al., as Executors of ROBERT C. BRADSHAW, Deceased, Appellants, *v.* THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Respondent.

Insurance (life) — policy upon life of husband for benefit of wife — rights of legatees of wife who died, leaving no issue, before death of husband — when rights of parties under policy not affected by letter of general agent of insurance company stating that policy had been made payable to husband's estate.

1. Where an insurance policy issued on a husband's life, upon an application signed in the name of his wife by him, for her use, or their children if she should not be living at the time of his death, and he paid the premiums on the policy, he acquired neither interest in nor power of disposition over the policy.   There being no children, the wife was given power by section 2 of chapter 821 of the Laws of 1873 to dispose of the policy by will, without limitation.

2. The rights of the legatees of the wife, she having died before the husband, cannot be affected by a letter from a general agent of the insurance company, in response to a request by the husband, stating that the policy had been made payable to his estate, nor did any estoppel arise therefrom which disabled the insurance company from denying the right of the executors of the husband to recover thereon.   The policy was a contract with the wife, and such transaction was ineffectual to alter it or to divert the insurance moneys from the wife's residuary legatees.

3. Where in an action on the policy by the executors of the husband there was no cause of action alleged in the complaint based on a right to recover back the premiums paid by their testator, and there was nothing before the court but the issue tendered as to their right to recover the insurance moneys under the policy, no recovery can be had on account of such premiums.

*Bradshaw* v. *Mutual Life Ins. Co.*, 140 App. Div. 917, modified.

(Argued March 22, 1912; decided May 24, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 2, 1910, affirming a judgment in favor of defendant entered upon a verdict directed by the court.

The action was brought to recover the amount of an insurance policy issued by the defendant on the life of the plaintiffs' testator and the contest is between plaintiffs and the residuary legatees of the testator's wife, Corrie J. Bradshaw. No question is made by the defendant that it is liable to pay the amount of the policy to one of the two sets of claimants.

While testator's wife was living, he had some talk with one of defendant's agents about taking out a policy of life insurance, payable to his wife, if living, or to their children. Subsequently, written application was made to the defendant for a policy to be issued on his life. In this application he was described as "the person proposed for insurance," and the application was signed in the name of his wife by him; the signature being placed opposite a printed instruction on the application that "a wife may sign by her husband." In response to this application, a policy was issued, payable on the death of the assured to "Corrie J. Bradshaw, wife of Robert C. Bradshaw, * * * for her sole use, if living, in conformity with the statute, and, if not living, to their children, or their guardian for their use." The policy was delivered to the testator, who appears to have retained it in his possession and who paid the premiums thereon. The wife died before he did; without children and leaving a will, which did not specifically bequeath the policy, or its proceeds, but did contain a residuary clause in terms broad enough to cover the same. Subsequent to his wife's death, testator wrote to the defendant advising it that he had its two policies, including this one, and stating "those are payable to my wife. * * * She died July 1st * * * and I desire these policies pay-

able to my estate. Will you please attend to this for me."
The defendant requested testator to supply affidavits set-
ting forth the death of his wife, the fact that she left no
children and that she died leaving a will; which was done.
Upon receipt of this, a letter was written to testator in
the name of the defendant's general agent by one Pratt,
who styled himself "Cashier," as follows: "I am in
receipt of your favor of the 5th inst., asking me to report
progress in the matter of changing your policy.   *   *   *
You filed an affidavit of the death of Mrs. Bradshaw,
which is all that is necessary to do in the matter. The
records of the company will show the fact that the policy
has been made payable to your estate." Thereafter,
testator continued to pay the premiums on the policy.
The trial court directed a verdict for the defendant and
on appeal to the Fourth Appellate Division, the judgment
entered on the verdict was affirmed. The plaintiffs
further appeal to this court.

*Arthur C. Wade* for appellants. The defendant is
now estopped from denying the right of the plaintiff to
recover under this policy. (Pom. Eq. Juris. § 804, *Ken-
yon* v. *K. T. & M. M. A. Assn.,* 122 N. Y. 247; *Bigelow*
on Estoppel [5th ed.], 573; Story on Cont. [5th ed.] § 571.)
The agreement between the plaintiff's testator and the
defendant was a valid contract of insurance, and may be
treated as a new policy of insurance, payable to the estate
of Robert C. Bradshaw on his death. (*Hicks* v. *B. A.
A. Co.,* 162 N. Y. 284; *Squier* v. *H. F. Ins. Co.,* 162
N. Y. 552.)

*Frederick L. Allen* for respondent. The defendant
was unable by any act of its own to confer any right upon
Robert C. Bradshaw and so take away from his wife's
executrix the right to the proceeds of the policy. (*Ryan*
v. *Pistone,* 89 Hun, 78; *Henry* v. *Ritenauer,* 31 Ind. 136;
*M. S. Bank* v. *Goff,* 13 R. I. 516; *Burgess* v. *Badger,* 124

Ill. 288; *Vance* v. *R. C. Mfg. Co.*, 82 Fed. Rep. 251; *Illinois Co.* v. *Linstroth*, 112 Fed. Rep. 737; *Ridgeway* v. *Grace*, 2 Misc. Rep. 293; *Thorne* v. *Deas*, 4 Johns. 84; *Hollins* v. *Hubbard*, 165 N. Y. 534; *Gerhardt* v. *Bates*, 2 El. & Bl. 475, 487.) There can be no estoppel, for Bradshaw was chargeable with knowledge of the legal impossibility of effecting a change in the policy. (*Baker* v. *U. M. L. Ins. Co.*, 43 N. Y. 283; *Sturne* v. *Boker*, 150 U. S. 312; *Brick* v. *Campbell*, 122 N. Y. 337; *Steel* v. *S. L. S., etc., Co.*, 106 U. S. 447; *Whitwill* v. *Winslow*, 134 Mass. 343; *Brewster* v. *Striker*, 2 N. Y. 19; *Chatfield* v. *Simonson*, 92 N. Y. 209.)

GRAY, J. I think that the judgment below was right. The plaintiffs had no interest in the contract sued upon and I am unable to understand how any new contract was created between their testator and the defendant. The policy of insurance, upon which the plaintiffs seek to recover, was a contract with the wife of the testator and though procured by him for her benefit, he was acting as her agent and represented her. It was immaterial that he paid the premiums and retained possession of the policy; those facts did not affect the contract as one with her alone. He acquired neither interest in, nor power of disposition over, the policy. His relation to it was that of the life insured; while hers was that of the legal holder, in whom, solely, was vested the interest. This cannot well be disputed upon the cases, (see *Whitehead* v. *N. Y. Life Ins. Co.*, 102 N. Y. 143; *Holmes* v. *Gilman*, 138 id. 369; *Shipman* v. *Protected Home Circle*, 174 id. 398; *Millard* v. *Brayton*, 177 Mass. 533), and the principle was recognized, when this case was, previously, before us. (187 N. Y. 347.) Under the statute, (Laws 1873, ch. 821, sec. 2), the testator's wife was given a power to dispose of the policy by will, upon the exercise of which there was no limitation; there being no issue of the marriage. As she left a will, which comprehended in its

residuary clause a disposition of the insurance moneys to others, they, as her legatees, only, are entitled to recover them from the defendant.

I cannot agree in the view that there resulted from the transactions between the plaintiffs' testator and the defendant, after the death of his wife, some new agreement by the latter to insure his life for the benefit of his estate; or that an estoppel arose thereout, which disabled the defendant from denying the plaintiffs' right to recover upon the policy in question. If we might assume, which I gravely doubt, that an agent could commit the defendant to a new and different liability, the letter, which is relied upon, could not alter the existing contract, and it did not effect a new one. If the assured supposed that the policy could be made payable to his estate, his ignorance of the law would not excuse him. Equally, the mistake of an agent of the defendant, in construing the contract and the rights of the assured under it, would not estop the defendant from thereafter taking that position, which the correct legal interpretation required. The parties had the contract before them and were chargeable with the knowledge of its legal effect and operation. Whether the assured, after his wife's death, could change the policy and have it made payable to his estate was a matter, which the law took care of, and what the defendant's agents said, or wrote, about it was a matter of opinion, which could not estop the defendant from asserting differently, upon being advised as to the law. (*Sturm* v. *Boker*, 150 U. S. 312; *Brick* v. *Campbell*, 122 N. Y. 337.) I cannot see that the assured was misled to his prejudice, in the sense that he was prevented from changing the terms of the existing policy, or from doing anything which he otherwise would have done. He lost nothing by relying on the word of the agent: for he had nothing to lose. There was no change he could have effected in the contract, by agreement, or by action, and there is nothing upon which to

base any inference that he desired to procure new insurance; nor is there any reason apparent why he should. The question of the case is not what the assured supposed, or what he was led to believe by the defendant's agent, but what was the agreement which the defendant was obligated to perform. That is to be determined from the allegations of the complaint and they set out the insurance policy and the transactions between the assured and the defendant, upon the former's application to have the terms of the policy changed and to have the amount thereof made payable to him. The policy was a contract with the wife and the transactions alleged and proved were ineffectual to alter it, or to divert the insurance moneys from the wife's residuary legatees.

There was no cause of action alleged in the complaint based on a right to recover back the premiums paid by the plaintiffs' testator and none such was added. The plaintiffs were suing to enforce payment to themselves of the moneys, which were payable by the defendant under the terms of the policy of insurance. But having no interest in the policy, as representatives of the assured, I am unable to perceive how they can, upon the cause of action alleged, be deemed entitled to recover the premiums in question. What took place at the trial neither extended the plaintiffs' right of recovery, nor added such a cause of action. There was nothing before the court but the issue tendered by the plaintiffs as to their right to recover the insurance moneys under this policy and I cannot find that any other question was raised. Having failed to establish their cause of action, as alleged, the plaintiffs were in no position to recover upon any different one. (*Southwick* v. *First Nat. Bank of Memphis*, 84 N. Y. 420.)

I think that the judgment should be modified, in accordance with the consent of defendant, by crediting on said judgment the premiums paid by plaintiffs' testator and interest thereon to date of judgment and, also, the

plaintiffs' costs to the date of service of offer of judgment, such amounts in case of dispute to be fixed by the Supreme Court; and, as so modified, that said judgment should be affirmed, with costs.

CULLEN, Ch. J. (dissenting). I think that in no view of this case can the judgment appealed from be affirmed. If we assume that the plaintiffs could not recover the amount of the insurance upon the life of their testator either because the agreement to transfer the policy from the testator's deceased wife to himself was void for want of legal power or because the agent was without authority to make it, then the plaintiffs were entitled to recover the amount of premiums paid by their testator after the decease of his wife with the interest thereon. It was not necessary that they should bring their action for that purpose. The complaint alleges not only the policy, but the agreement or statement of the defendant made after the death of the wife that it had transferred the policy so as to make the insurance money payable to the testator's estate, and that relying on such statement he had paid various premiums. The defendant repudiated the agreement on one or both of the grounds mentioned. On a repudiation of the agreement it was bound to restore the premiums it had received. Strictly speaking, it should in its answer have tendered their return and paid the money into court. (*Waddington* v. *United Ins. Co.*, 17 Johns. 23.) This remains the general rule throughout the country (1 Bigelow on Frauds, p. 80, and see cases there cited), but it has been modified in this state by the decision in *Harris* v. *Equitable Life Ass. Socy.* (64 N. Y. 196). That was an action on an insurance policy in which the defendant set up fraud and offered to allow judgment for the amount of the back premiums and interest. On the trial the court excluded proof of the offer and directed a verdict for the amount of the policy because the defendant had not returned or offered in

its answer to return the premiums. The judgment was reversed at the General Term and on appeal the reversal was affirmed by this court. The court held that the offer to allow judgment was a sufficient offer to return because the judgment in the case could have awarded to the plaintiff the relief to which he was entitled in case the defendant succeeded in its repudiation of liability. *Allerton* v. *Allerton* (50 N. Y. 670) was cited as an authority sustaining the decision, but there is not a suggestion that because the plaintiff did not accept the defendant's offer the defendant was entitled to keep the money. When the court decided that restoration in advance was unnecessary because the judgment in the action could take care of the plaintiff's rights, it necessarily decided that no other action to recover the premiums was necessary and that they could be recovered in that action, for if another action was necessary for that purpose, then relief could not have been afforded in the action then before the court.

The plaintiffs waived nothing by the course of their counsel at the trial. He asked the court for nothing except to go to the jury on all the issues in the case. He frankly told the court that he should claim that he was entitled to the return of the premiums. It may be that if he had confined his claim to a verdict for that amount the court would have directed such a verdict, but he wanted more. He was not bound to accept the court's suggestion. "Where a party is nonsuited upon the motion of his adversary, over his objection and exception, he may insist, upon a review of the decision, not only that the judge at circuit erred in the application of the law to the facts as viewed by him but that he erred in his conclusions of fact or that there were disputed questions of fact which should have been submitted to the jury." (*Clemence* v. *City of Auburn*, 66 N. Y. 334, 338; Baylies New Trials & Appeals [1st ed.], p. 185.) Asking a trial court to direct a verdict, unless followed by a request to go

to the jury in case the direction is refused, often leads counsel into fatal difficulties, and there are times when it is wiser to have the case passed upon by the jury even if the court intimates a willingness to comply with a request if made.    But whatever may have been his reason, counsel could stand on his rights and his exception to the nonsuit or direction of the verdict was good if there was any matter of fact to be submitted to the jury, or if as matter of law he was entitled to recover any sum.    In *Paltey* v. *Egan* (200 N. Y. 83, 89) Judge HISCOCK said: "The ordinary question is presented to us which arises on any nonsuit whether there was any view of the case on which the appellants should have been allowed to go to the jury, and this brings us to the merits of the appeal.    The appellants were not required to make specific requests to go to the jury."    In *Pneumatic Signal Co.* v. *Texas & Pacific Ry. Co.* (200 N. Y. 125, 129) Judge WILLARD BARTLETT said: "A plaintiff in bringing his action thereby asks to go to the jury on any and every issue of fact which may arise upon the complaint and answer; and the specification by counsel of some issues which occur to him at the moment as especially proper to be submitted, when he perceives that the court is about to direct a verdict against him, does not constitute a waiver of his right to go to the jury upon every other issue of fact which is really in the case."

The question here discussed may be of vital importance to the plaintiffs.    The action has been three times tried; three times on appeal to the Appellate Division and this is the second appeal to this court.    The costs incurred in the action probably exceed the amount of the policy.    The plaintiffs contend that the amount for which judgment was offered by the defendant was inadequate.    If they are correct in this claim, they will not only be relieved from the judgment for such costs, but will be entitled to recover them from the defendant.    This cannot be determined by us.    It can be decided only when

costs are taxed on the final determination of the action. The modification made by the majority of the court leaves the plaintiffs subject to the imposition of costs in the courts below, and at the same time amounts to a denial of their right to recover costs. It seems to me, therefore, that the plaintiffs have the unqualified right to have the question determined by this court whether or not they were entitled to a verdict for the amount of the premiums paid by their testator.

The judgment should be reversed and a new trial granted, with costs to abide the event.

Vann, J. (dissenting). The defendant promised to pay the amount of the policy to Mrs. Bradshaw if living when her husband died, and if not then living, to their children; but no provision was made for payment to any one if she died first and there was no child. As he survived her and they had no children, the question arose to whom should the policy be paid in this contingency? Neither the company nor Mr. Bradshaw had any doubt upon the subject and both knew all the facts. Upon his application to have the policy made payable to his estate, certain proof was required by the company, and when, after some trouble and expense, it was furnished in due form, the company, through its general agent duly and specifically authorized, wrote him that the policy had been made payable to his estate, as its records would show. He never saw its records, but acting upon this official declaration continued to pay the premiums for five years without taking out other insurance and then died, whereupon the company took the position that it had no right to make the policy payable to his estate and repudiated its action in that regard, claiming that it was not bound thereby because both parties had acted under a mistake of law.

Upon the first appeal we did not have the application before us and it now appears that it was signed "Corrie

J. Bradshaw, per R. C. Bradshaw." The company knew
this, yet upon the application of Mr. Bradshaw and after
compliance by him with its exactions it formally notified
him that this was all that it was necessary for him to
do in the matter and that the policy had been made pay-
able to his estate. Relying upon this he continued to
pay the premiums. During the remainder of his life he
rested on the assurance of the company that his life was
insured by it for the benefit of his estate. After this
written statement was made by the company upon the
conclusion of the negotiations between them, he fully
performed on his part and died in the belief that he had
a personal contract of insurance. The company now
refuses to pay anything to his estate and even insists on
keeping the premiums paid since it wrote him that he
was personally insured. Taking something for nothing
is a fraud when no gift is intended. I think the jury
could have found under proper instructions that the
company was estopped from denying the existence of a
contract such as Mr. Bradshaw supposed and had the
right to suppose he had made with it personally, even if
the result is that owing to its own act it may be forced
to pay twice. This evil would be less than the destruc-
tion of all confidence by thousands of policyholders in
deliberate and formal statements in writing of insurance
companies that applicants for insurance are in fact
insured. Such a statement made under the circum-
stances of this case should be regarded as a contract even
without the aid of estoppel. The company should be
held to have done what it well knew Mr. Bradshaw
believed at the time it had done. Forms of contracts
and methods of action are within the control of the com-
pany and what it declared was sufficient should be held
sufficient. The courts should take the company at its
word, just as the insured did and as all insured persons
do in making contracts of insurance. Such parties do
not stand on an equal footing, for the insured is com-

pelled to accept such form of contract as the company chooses to give, confiding in its knowledge of the law and relying on its promise, whether express or implied, to pay at maturity to the person whom it knew at the time of the transaction the insured expected payment to be made.

This is written to suggest what should be done and in dissent from what is about to be done, in so far as the proposed judgment of the court denies recovery of the full amount of insurance. No precedent in this state requires it and justice cries out against it. The way is open to lay down the practical and wholesome rule that when an insurance company, in consideration of premiums to be paid and which are in fact paid, issues its written statement that the life of the one who pays for the insurance is insured for the benefit of his estate, a contract is thereby made as binding as if written out in a formal policy.

I vote for reversal and a new trial.

HAIGHT, HISCOCK and CHASE, JJ., concur with GRAY, J.; CULLEN, Ch. J., and VANN, J., read dissenting opinions, with whom WILLARD BARTLETT, J., concurs.

Judgment affirmed.