### GREMS v. TRAVER.

(Supreme Court, Equity Term, Jefferson County.  February, 1914.)

1. INSURANCE (§ 114*)—LIFE POLICIES—INSURABLE INTEREST.
    At common law it was necessary to have an insurable interest, in order to sustain a policy upon the life of another.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 136–138; Dec. Dig. § 114.*]

2. INSURANCE (§ 585*)—LIFE INSURANCE—RIGHTS OF WIFE.
    Under Laws 1840, c. 80, § 1, declaring that any married woman may, with his consent, procure a policy upon the life of her husband, and the proceeds of such insurance shall be free from claims of the creditors or representatives of the husband, a husband cannot interfere with a policy upon his life payable to his wife, for the purpose of the statute was to provide support for the wife in case of possible widowhood.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1461–1468; Dec. Dig. § 585.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. INSURANCE (§ 204*)—LIFE POLICIES—ASSIGNMENTS.

Under the act of 1840 (Laws 1840, c. 80), referring to life policies in favor of the wife upon the life of her husband, an assignment by a wife of her interest in such a policy is void.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 472; Dec. Dig. § 204.*]

4. INSURANCE (§ 201*)—LIFE POLICIES—CONTRACT OF INSURANCE.

It is unnecessary for a policy in favor of a wife upon the life of her husband to refer to the act of 1840 (Laws 1840, c. 80) to bring the case within the protection of the statute, for from the beneficial nature of the contract it will be presumed to have been made with reference to the act.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 470; Dec. Dig. § 201.*]

5. HUSBAND AND WIFE (§ 25*)—AGENCY OF HUSBAND—INSURANCE ON LIFE OF HUSBAND.

Where a husband in 1893 made out in his wife's name an application for a policy upon his life in her favor, he acted as the wife's agent, and the rights of the wife in the policy issued on the application are fixed by act of 1840 (Laws 1840, c. 80), and so the policy is not subject to the husband's creditors.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 148–151, 153, 154, 525; Dec. Dig. § 25.*]

6. STATUTES (§ 183*)—CONSTRUCTION.

A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter, while a thing within the letter of the statute is not within the statute unless it be within the intention of the makers.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 261; Dec. Dig. § 183.*]

7. STATUTES (§ 184*)—CONSTRUCTION.

In construing statutes, the intention of the Legislature is to be ascertained from the cause or necessity which led to the enactment.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 262; Dec. Dig. § 184.*]

8. INSURANCE (§ 585*)—LIFE INSURANCE—STATUTES.

Domestic Relations Law (Consol. Laws, c. 14) § 52, providing that a married woman may, with his consent, procure a policy upon the life of her husband, which insurance money shall be her separate property and free from any claim of a creditor or representative of the husband, applies to a policy negotiated by the husband and made payable to the wife, as well as to insurance which she herself places upon the life of her husband.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1461–1468; Dec. Dig. § 585.*]

9. INSURANCE (§ 586*)—LIFE POLICY—VESTED INTEREST.

Where a semi-tontine policy upon the life of the husband was payable to the wife, the wife had a vested interest, of which she could not be deprived, except in accordance with the policy provisions that, in case of her death before that of her husband, the proceeds should be paid to the latter's representatives, and that, upon completion of the tontine dividend period, the husband should, without the consent of the beneficiary, have the option to withdraw in cash the accumulated surplus, etc.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1470; Dec. Dig. § 586.*]

10. INSURANCE (§ 585*)—LIFE POLICIES—RIGHTS OF BENEFICIARY.

Where a semi-tontine policy payable to insured's wife provided that at the end of the tontine dividend period insured should have certain al-

ternatives as to withdrawal of the surplus, etc., the wife's interest is not defeated, where before the husband's bankruptcy the parties, by negotiation, agreed that the husband should withdraw the surplus, and that the policy should be continued for the benefit of the wife.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1461–1468; Dec. Dig. § 585.*]

11. INSURANCE (§ 586*)—LIFE POLICIES—RIGHTS OF INSURED.
Though a life policy, procured by a husband as a protection to his wife and family in case of his death and payable to the wife, authorized the husband to change the beneficiary without the consent of the wife, the wife has a vested interest in the policy, which, until change of beneficiary, cannot be reached by the creditors of her husband, for such a policy is within the protection of Domestic Relations Law (Consol. Laws, c. 14) § 52; this case being different from the ordinary case of the beneficiary of a certificate issued by a fraternal insurer.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1470; Dec. Dig. § 586.*]

12. BANKRUPTCY (§ 143*)—ASSETS.
A policy upon the life of a bankrupt husband is not assets in the hands of his trustee, unless it had a surrender value payable to the bankrupt alone.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 201, 202, 213–217, 223, 224; Dec. Dig. § 143.*]

13. INSURANCE (§ 588*)—LIFE POLICY.
A life policy which provided that after five years' payment the company would, upon request of the insured, with a full and valid surrender of the policy and of all claims thereunder, pay a cash surrender value, cannot be surrendered without the consent of the beneficiary, who had a vested interest therein.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1471; Dec. Dig. § 588.*]

14. BANKRUPTCY (§ 143*)—ASSETS—RIGHTS OF TRUSTEES.
Where the only right of a bankrupt husband, upon whose life there was a policy for the benefit of his wife, was to change the beneficiary, he had no present interest which would pass to the trustee, for under Bankr. Act July 1, 1898, c. 541, § 70a, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451), the trustee is only vested with the powers the bankrupt might have exercised for his own benefit.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 201, 202, 213–217, 223, 224; Dec. Dig. § 143.*]

15. BANKRUPTCY (§ 143*)—ASSETS—RIGHT OF TRUSTEE.
Where a husband long before bankruptcy procured insurance policies upon his life payable to his wife, and delivered them to her, there was an executed gift, and the wife was entitled to the policies free from the claims of the husband's trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 201, 202, 213–217, 223, 224; Dec. Dig. § 143.*]

Action by Georgia A. Grems against G. Le Roy Traver, as trustee in bankruptcy of Harry B. Grems, and others.  Judgment for plaintiff.

Cobb & Cosgrove, of Watertown, for plaintiff.

Pitcher & O'Brien, of Watertown, for defendant Traver.

Purcell, Cullen & Purcell, of Watertown, for defendant Northwestern Mut. Life Ins. Co.

EMERSON, J.  The plaintiff, claiming to be the owner of two policies of life insurance issued by the Northwestern Mutual Life Insur-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ance Company upon the life of her husband, Harry B. Grems, seeks by this action to restrain his trustee in bankruptcy from collecting or enforcing the same, and also asks a decree adjudging her to be the owner of said policies of insurance. The policies in question were issued and held by the parties under the following circumstances:

In the year 1893 the husband was at work in a store in Rochester, and, a child having been born to them, he signed an application for life insurance in the name of his wife, upon which application policy No. 274,703 was issued by the defendant insurance company on January 21, 1893. This policy was what is called a semi-tontine policy, and by its terms, in consideration of the statements contained in the application and the quarterly payment of $7.60, said insurance company agreed to pay to plaintiff, as beneficiary, wife of Harry B. Grems, the insured, the sum of $1,000 in 60 days after due proof of the fact and cause of his death, provided, however, that if said beneficiary should not survive the insured then such payment should be made to the personal representatives of said insured. The tontine dividend period fixed by the policy was 20 years, and it further provided that upon completion of the tontine dividend period the said assured should, without the consent of the beneficiary, have the option to withdraw in cash the accumulated surplus, leaving the policy participating and full-paid for its face, or, if insured was in good health, to apply said surplus to the purchase of a nonforfeitable participating paid-up addition to the face of the policy, or, without proof of good health, to apply said surplus to purchase an annuity, or to surrender the policy and receive therefor in cash its entire share of assets.

Later on and in the year 1898 the parties moved to Watertown, and, having had another child born, after further talk upon the subject, the husband in his own name signed another application for insurance in the same company, upon which policy No. 407,265 was issued. This policy provided that, in consideration of the payment of an annual premium of $66.34 during the period of 20 years, said insurance company promised to pay to the plaintiff beneficiary, wife of Harry B. Grems, the insured, subject to right of the insured to change beneficiary as therein stated, the sum of $2,000 in 60 days after due proof of the fact and cause of his death, provided, however, if no beneficiary should survive the said insured, then such payment should be made to his personal representatives. Said policy further provided that the insured might change the beneficiary at any time by filing a written request therefor duly acknowledged and accompanied by the said policy.

Said policies were delivered by the company to Grems, who took them home and handed them to his wife, stating that they were her property, and that she should hold and keep them as a matter of protection. The wife put them in her trunk or bureau drawer, and kept them there until about the year 1908, when, Grems having rented a safe deposit box where he kept his valuable papers, these policies were put in said box for safe-keeping, and there remained down to the time this controversy arose. Following the execution of said policies the premiums thereon were paid by both Grems and his wife; such pay-

ments, however, all being made from money furnished by Grems. The tontine dividend period expired on January 21, 1913, and with the consent of the wife, and upon a receipt signed by her, Grems drew the tontine accumulation of $222.79, leaving the policy to continue as paid-up insurance. This was done under an agreement between the parties that Grems should have the tontine surplus to use in his business, the policy to be continued as an insurance for the benefit of the wife.

About June 1, 1913, Grems filed a petition in bankruptcy, and thereafter the defendant, G. Le Roy Traver, was appointed his trustee in bankruptcy. The bankrupt caused to be made out and verified schedules in bankruptcy in which the policies in question were listed as securities. Later on, however, he filed with the trustee a claim of exemption as to said policies, which claim was disallowed by the trustee. Thereafter a controversy arose over the possession of said policies. The trustee claimed that they belonged to the bankrupt, and that he was entitled to them as such trustee, and threatened to surrender them to the Insurance Company and receive their present value as assets of the bankrupt estate. The plaintiff thereupon brought this action to restrain such disposition and for a decree adjudging her to be the owner of the same. The important question in the case, therefore, is, Who was the beneficial owner of the policies? for, if owned by the husband, they would go to the trustee as part of the assigned estate, otherwise, to the wife to be held for her future protection.

[1, 2] In determining this question we should in the first instance have in mind certain principles upon which the doctrine of life insurance is based and the evolutions of statutory law upon the subject. At common law it was necessary to have an insurable interest in order to sustain a policy upon the life of another; otherwise, the policy was a mere wager contract, and therefore invalid. Ruse v. Mut. Ben. Life Ins. Co., 23 N. Y. 516. It was for a long time a mooted question whether at common law a wife had an insurable interest in the life of her husband and could insure the same for a gross sum; also whether all interest did not cease and the policy lapse with her death. Ruppert v. Union Mut. Ins. Co., 30 N. Y. Super. Ct. 155, 156; Frank v. Mut. Life Ins. Co., 102 N. Y. 273, 274, 6 N. E. 667, 55 Am. Rep. 807; Barry v. Equit. Life Ass. Soc., 59 N. Y. 592, 593; Whitehead v. N. Y. Life Ins. Co., 102 N. Y. 151, 6 N. E. 267, 55 Am. Rep. 787.

To remedy this condition and set the question at rest the Legislature enacted chapter 80, Laws of 1840, the first section of which act reads as follows:

"It shall be lawful for any married woman, by herself, and in her name, or in the name of any third person, with his assent, as her trustee, to cause to be insured, for her sole use, the life of her husband for any definite period, or for the term of his natural life; and in case of her surviving her husband, the sum or net amount of the insurance becoming due and payable, by the terms of the insurance, shall be payable to her, to and for her own use, free from the claims of the representatives of her husband, or of any of his creditors; but such exemption shall not apply where the amount of premium annually paid shall exceed three hundred dollars."

Section 2 of that act provided that in case of the death of the wife before the decease of her husband the amount of the insurance might be made payable after her death to her children.

This statute of 1840 was thereafter amended from time to time in unimportant particulars so far as the questions here involved are concerned, save that the amount of exemption was increased to $500 and made dependent upon premiums paid out of the property of the husband. Thus the statute continued until 1896, when it was substantially re-enacted in section 52 of the Domestic Relations Law (Consol. Laws, c. 14).

[3] It is plain that said statute was passed for a most beneficent object. Its purpose and intent was to provide support for the wife in case of possible widowhood and to put it beyond the power of either husband or wife to take away the same. The husband was not permitted to interfere with provisions he had thus created, as his wife possessed a vested interest in the policy that he was powerless to destroy. Whitehead v. N. Y. Life Ins. Co., 102 N. Y. 144, 152, 153, 6 N. E. 267, 55 Am. Rep. 787. And all assignments by the wife of her interest in such policies were declared by the courts to be invalid and void. Eadie v. Slimmon, 26 N. Y. 9, 15, 17, 82 Am. Dec. 395; Barry v. Equit. Life Ass. Soc., 59 N. Y. 587, 592, 593; Brummer v. Cohn, 86 N. Y. 11, 40 Am. Rep. 503; Smillie v. Quinn, 90 N. Y. 496, 497; Baron v. Brummer, 100 N. Y. 372, 3 N. E. 474; Miller v. Campbell, 140 N. Y. 457, 35 N. E. 651.

[4] It was also held that it was not necessary to refer to the statute in the policy in order to bring the case within its protection, as from the beneficial nature of the contract it would be presumed to have been made with reference to the act. Brummer v. Cohn, 86 N. Y. 11, 14–16, 40 Am. Rep. 503; Dannhauser v. Wallenstein, 52 App. Div. 315, 65 N. Y. Supp. 219; Brick v. Campbell, 122 N. Y. 338, 25 N. E. 493, 10 L. R. A. 259. The nonassignable character of a wife's insurance upon the life of her husband continued until the enactment of chapter 821, Laws of 1873, which authorized a married woman, in case she had no children, to dispose of the policy by deed or will, and the further statute of 1879 (chapter 248), which made all policies issued upon the lives of husbands for the use and benefit of their wives assignable with the written consent of their husbands. The substance of these statutes is now incorporated in section 52 of the Domestic Relations Law.

[5] It will be observed that when the first policy was issued the statute of 1840 was in force, while the last policy was issued under the Domestic Relations Law, and the important question now arises whether the rights of the parties are to be determined by the provisions of those statutes. So far as the first policy is concerned, there would seem to be no reasonable doubt upon the subject. It was issued upon an application made out in the name of the wife, and therefore, in procuring such insurance, the husband acted as the agent of his wife, and the case is brought directly within the provisions of the act of 1840. Whitehead v. N. Y. Life Ins. Co., 102 N. Y. 143, 6 N. E. 267, 55 Am. Rep. 787; Bradshaw v. Mutual Life Ins. Co., 205 N. Y. 467, 98 N. E. 851.

[6-8] The second policy, however, involves other considerations. This policy was procured by the husband upon his own application and was made payable to his wife. The question thus presented is whether section 52 of the Domestic Relations Law includes within its terms policies of insurance which were negotiated by the husband and made payable to the wife, as well as insurance which she herself placed upon the life of her husband. As to this it seems to me there can be but one answer. The statute, as we have seen, was passed for a most beneficial purpose, and in order to give full effect to the manifest intention it is just as essential to have it apply to policies negotiated by the husband as to those procured by the wife. It was said by Lord Bacon many years ago that a thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter, and a thing within the letter of the statute is not within the statute unless it be within the intention of the makers. Bacon's Abr. tit. "Statute" §§ 5, 10; People v. Utica Ins. Co., 15 Johns. 381, 8 Am. Dec. 243; Holmes v. Carley, 31 N. Y. 289, 290.

It is further said that the controlling consideration is the intention of the Legislature, which is to be ascertained from the cause or necessity which led to the enactment of the statute. A strict and literal interpretation is not always to be adhered to, and where the case is brought within the intention of the lawmakers it is within the statute, although by a technical interpretation it is not within its letter. People v. Lacombe, 99 N. Y. 43, 49, 1 N. E. 599; Spencer v. Myers, 150 N. Y. 269, 275, 44 N. E. 942, 34 L. R. A. 175, 55 Am. St. Rep. 675. The latter case is an instructive authority upon the judicial construction of statutes. In that case the Legislature had enacted that all policies issued "within the state of New York" upon the lives of husbands for the benefit of their wives should be assignable, and it was held that policies issued without the state were within the meaning and intention of the statute, and were therefore included in the same.

Furthermore, as the section above referred to from the Domestic Relations Law is a substantial re-enactment of the act of 1840, the decisions under that statute will be found most useful in its construction. It has been repeatedly held by our courts that the act of 1840 applied to policies negotiated by the husband and made payable to the wife. In other words, it is held that when it appears that the insurance was intended by the husband as a protection to the wife, the case is brought within the equity of the statute, and the rights of the parties are to be determined by its provisions.

Thus in Wilson v. Lawrence, 13 Hun, 238, 241, where a policy was taken out by the husband, payable to his wife, it was held that it was apparent that the husband designed it as a provision for the support of his wife during widowhood, and therefore it was within the equity and controlled by the act of 1840. This case was affirmed by the Court of Appeals in 76 N. Y. 585. The same doctrine was held in Dannhauser v. Wallenstein, 52 App. Div. 312, 315, 65 N. Y. Supp. 219. This case was reversed by the Court of Appeals, but upon another point; there being no dissent as to the doctrine above enunciated.

In Smillie v. Quinn, 90 N. Y. 492, 496, the policy was taken out

upon the application of the husband and made payable to the wife, and it was conceded that the case was governed by the act of 1840. In Barry v. Equitable Life Ass. Soc., 59 N. Y. 585, the policy was taken out by the husband in the name of his wife and it was held that the rights of the wife were to be determined by the act of 1840. This case was followed by Brummer & Cohn, 86 N. Y. 11, 40 Am. Rep. 503, where the same doctrine was reaffirmed, and finally in Guardian Trust Co. v. Straus, 139 App. Div. 884, 123 N. Y. Supp. 852, affirmed in 201 N. Y. 546, 95 N. E. 1129, it was expressly held that the statute of 1840 applied to policies negotiated by the husband and made payable to the wife.

Nor do I think that the recent decision of the Court of Appeals in the case of Bradshaw v. Mutual Life Ins. Co., 187 N. Y. 347, 80 N. E. 203, 10 Ann. Cas. 266, establishes any contrary doctrine. In order to understand the Bradshaw decision we must have in mind the facts there before the court and the question that was up for decision. The controversy there arose over the power of the wife to dispose of the policy by will. The act of 1840 contained no provisions whatever upon that subject, and the same was added by amendment in 1873 (chapter 821). The court, therefore, was not called upon to construe the act of 1840, but only the added amendment of 1873. The facts were that the husband had taken out a policy of insurance payable to his wife, if living, and, if not living, to their children. The husband paid all the premiums, and they never had any children. The wife died before her husband, leaving a will by which she bequeathed away all her property. After her death, upon the application of the husband, the company made the policy payable to his estate. It was held by the Court of Appeals that, the policy having been taken out by the husband and he having paid all the premiums, and the policy on its face being payable to her if she survived her husband, otherwise to her children, and there being no children to take in the event of her decease, the title of the wife was conditioned upon her surviving the husband, and therefore, when she predeceased him, all her interest in the policy was terminated, and the right to dispose of the same by will did not exist; that under such circumstances the husband could not have intended the insurance should become part of her estate, instead of his own. It was further held that the provisions of the amendatory act of 1873, authorizing a married woman to dispose of such a policy by will, only applied to insurance she had herself placed on the life of her husband. In other words, that the statute did not include cases where the husband had himself taken out the insurance and paid all the premiums, and where, as the wife had predeceased her husband, there was no longer any necessity for the protection that the insurance was intended to furnish. There is nothing whatever in the Bradshaw Case at all in conflict with the authorities above cited. On the contrary, the court conceded that it was a valid contract of insurance as long as the wife lived, and that if the husband had died during her lifetime she could have collected the amount of the policy. The policies were, therefore, within the protection of the act of 1840 and section 52 of the Domestic Relations Law. Upon the wife surviving her husband, she would be

entitled to receive the insurance money free from any claims of the creditors or personal representatives of the husband. This right of the wife was a vested interest, of which she could not be deprived.

[9] It seems to me entirely clear that so far as the first policy is concerned the wife possessed a vested interest in the same. That it was subject to be defeated by her death during the life of her husband made her interest no less of a vested nature. It was at most a mere conditional limitation upon her interest, and until that condition arose her interest continued in the policy. Bradshaw v. Mut. Life Ins. Co., 187 N. Y. 354, 355, 80 N. E. 203, 10 Ann. Cas. 266. That she possessed a vested interest of which she could not be deprived, save in the manner provided in the policy, I think is in accord with all the authorities. Ruppert v. Union Mut. Ins. Co., 30 N. Y. Super. Ct. 155; Ferdon v. Canfield, 39 Hun, 572; Stilwell v. Mut. Life Ins. Co., 72 N. Y. 386; Whitehead v. N. Y. Life Ins. Co., 102 N. Y. 151, 6 N. E. 267, 55 Am. Rep. 787; Garner v. Germania Life Ins. Co., 110 N. Y. 267, 18 N. E. 130, 1 L. R. A. 256; U. S. Trust Co. v. Mut. Ben. Life Ins. Co., 115 N. Y. 152, 157, 21 N. E. 1025; Schneider v. U. S. Life Ins. Co., 123 N. Y. 109, 113, 25 N. E. 321, 20 Am. St. Rep. 727; Walsh v. Mut. Life Ins. Co., 133 N. Y. 408, 31 N. E. 228, 28 Am. St. Rep. 651; Holmes v. Gilman, 138 N. Y. 382, 34 N. E. 205, 20 L. R. A. 566, 34 Am. St. Rep. 463; Fidelity Trust Co. v. Marshall, 178 N. Y. 468, 473, 71 N. E. 8; Geoffroy v. Gilbert, 5 App. Div. 98, 101, 38 N. Y. Supp. 643, affirmed on opinion below; Sterritt v. Manhattan Life Ins. Co., 38 App. Div. 602, 52 N. Y. Supp. 1132, 58 N. Y. Supp. 1149; Washington Central Bank v. Hume, 128 U. S. 195, 206, 9 Sup. Ct. 41, 32 L. Ed. 370.

[10] Nor was the interest of the wife in any manner affected by the option to be exercised at the expiration of the tontine dividend period. The parties agreed that the tontine surplus should be withdrawn and the policy continued as a participating and full paid-up policy. This was done prior to the husband's bankruptcy, so that at that time the option which the policy gave the husband was no longer a factor in the case. Anderson v. Goldsmidt, 103 N. Y. 618, 9 N. E. 495.

[11-14] It is, however, urged by the counsel for the defendant trustee that as to the second policy the husband reserved the right to change the beneficiary, and hence the wife never had any vested interest in the same. It has been held in the case of co-operative associations that the beneficiary had no vested interest in the insurance where the member possessed an option to change the beneficiary at his pleasure without the consent of the beneficiary named in the policy. The right to make such change is provided for in the Insurance Law, and hence the insurance benefit is regarded as attached to the membership, and not to the beneficiary named. Therefore the right of the payee had no other foundation than the bare intent of the member revocable at any moment. 2 Cons. Laws, 2660 (Ins. Law, art. 6, § 211); Steinhausen v. Mut. Acc. Ass'n, 59 Hun, 336, 339, 13 N. Y. Supp. 36; Smith v. Nat. Ben. Soc., 123 N. Y. 85, 88, 25 N. E. 197, 9 L. R. A. 616. In other words, the right of indemnity does not rest upon contract, but is a mere feature of the membership, and cannot be disconnected there-

from. The certificate is not a chose in action like an ordinary policy of life insurance, in which a right of property may vest, and the only right of the member is to exercise a power of appointment over the same. Sabin v. Grand Lodge, 6 N. Y. St. Rep. 152, 156, 157. Hellenberg v. Order B'nai Berith, 94 N. Y. 580, 585. But even in the case of co-operative insurance, where the membership was taken out under a contract that the indemnity should be paid to a certain party, such beneficiary has a vested right in the same. Smith v. Nat. Ben. Soc., 123 N. Y. 85, 88, 25 N. E. 197, 9 L. R. A. 616.

The case here presented is entirely unlike that of co-operative insurance, to which the above rule pertains. The policy of insurance in this case is not a membership benefit, but a contract obligation. Washington Central Bank v. Hume, 128 U. S. 205, 9 Sup. Ct. 41, 32 L. Ed. 370. It was procured by the husband as a protection to his wife and family in case of his possible death, and by the terms of the statute the wife is entitled to receive the amount of insurance upon the death of her husband free from all claims of creditors. Granted that by the policy the husband has the right to change the beneficiary without consent of the wife, this means nothing more than a right upon his part to terminate the security he had provided for his wife and family. If he dies in the meantime before making such change, the wife is entitled to the amount of the policy. Sangunitto v. Goldey, 88 App. Div. 79, 84 N. Y. Supp. 989.

How, then, can it be said that the wife possesses no vested interest in the policy, when she has a right to collect the insurance money in case her husband dies? She possessed either a vested interest in the policy, or she had merely an expectancy or inchoate right; and how can it be claimed that the mere right to terminate a contract operates to make its obligations a mere expectancy only? It is quite true that her rights may be terminated by the action of her husband; but that does not in my judgment create any expectancy, or make her interest in the policy a mere contingency. Her contract rights are vested and complete, and the power of the husband to terminate the same by a change of beneficiary is a mere conditional limitation, which, when exercised, terminates her rights, but does not make her interest in the policy any the less of a vested nature. 40 Cyc. 1643, 1663.

The counsel for the trustee in bankruptcy, however, strenuously urge that the power of the insured to change the beneficiary operates to deprive the wife of all of her interest in the policy, and they press upon my attention several decisions of the United States courts, made in bankruptcy cases, which they claim establish the above proposition. A complete analysis of these decisions would serve no useful purpose at this time. It is sufficient to say that they all proceed upon the theory that the policy gave the insured certain reserved rights that he could avail himself of without consent of the beneficiary, and therefore those rights were property interests in the bankrupt that passed to his trustee. It is only to the extent that the utilization of these rights operates to destroy the interest of the wife in the policy that the doctrine asserted has any support in the cases. Thus in the White Case, 174 Fed. 333, 98 C. C. A. 205, 26 L. R. A. (N. S.) 451, the policy reserved

the right in the insured to surrender it at any time and take paid up insurance or other value therefor. The Hettling Case, 175 Fed. 65, 99 C. C. A. 87, and the Draper Case (D. C.) 211 Fed. 230, opinion by Judge Ray, are also to like effect.· The further significant fact appears that in none of those policies did it appear that the policies were intended for the protection of the wife and were taken out under an agreement to that effect.

It may also be said that the assertion in the White Case that the protection afforded the wife by section 52 of the Domestic Relations Law only extended to policies which she could dispose of by will or herself assign is not in accordance with the decisions in this state. The following cases are also to like· effect: Matter of Herr (D. C.) 182 Fed. 716, 25 Am. Bankr. Rep. 142; Matter of Dolan (D. C.) 182 Fed. 949, 25 Am. Bankr. Rep. 145; Matter of O'Rear, 178 Fed. 632, 102 C. C. A. 78, 30 L. R.· A. (N. S.) 990, 24 Am. Bankr. Rep. 343; Matter of Diack (D. C.) 100 Fed. 770; Matter of Boardman (D. C.) 103 Fed. 783; Matter of Becker (D. C.) 106 Fed. 54; Matter of Welling, 113 Fed. 189, 51 C. C. A. 151. See, also, Jacobs v. Strumwasser, 84 Misc. Rep. 28, 145 N. Y. Supp. 916. The converse of the rule above stated is also held, and that is, unless the policy is payable to the insured, or it has a surrender value payable by the terms of the policy to him alone, he has no interest that passes to the trustee. Matter of Buelow (D. C.) 98 Fed. 87; Matter of McDonnell (D. C.)·101 Fed. 239. A policy that does not assure to the bankrupt some actual value as an asset does not pass to the trustee. Gould v. N. Y. Life Ins. Co. (D. C.) 132 Fed. 927; Clark v. Equit. Life Ass. Co. (C. C.) 143 Fed. 175.

An examination of the'policy in question will show that it does not contain any of the provisions essential to bring the case within the rules laid down by the United States courts. It was taken out for the especial benefit of the wife under an agreement that it should be held for her protection. It is not an endowment, but a limited payment straight life policy. There is no proof of the custom of the company as to allowing ·a cash surrender or paid-up value, and the only provision in the policy in relation to a cash surrender value is where, after five years' payment or more, the company will, upon request of insured, with a full and valid surrender of the policy and of all claims thereunder, pay a cash surrender value as indicated in the table. The policy does not say that this shall be paid to or belong to the insured, or that it may be done without the consent of the beneficiary. On the contrary, it is manifest that such consent is necessary, as before the payment is made the policy and all claims thereunder must be surrendered to the company. A surrender under such circumstances by the assured without the consent of the beneficiary would be invalid and void. Whitehead v. N. Y. Life Ins. Co., 102 N. Y. 144, 6 N. E. 267 55 Am. Rep. 787; Garner v. Germania Life Ins. Co., 110 N. Y. 267, 18 N. E. 130, 1 L. R. A. 256; Schneider v. U. S. Life Ins. Co., 123 N. Y. 109, 113, 25 N. E. 321, 20 Am. St. Rep. 727.

The .most that can be claimed is that the insured had the right to terminate the wife's insurance by making a change of beneficiaries. Assuming that he had the right to make himself a beneficiary, that

would not give him any present interest in the policy which would pass to the trustee, as the policy would not mature during his lifetime, and hence there was nothing for the trustee to receive. Matter of Buelow (D. C.) 98 Fed. 87; Matter of McDonnell (D. C.) 101 Fed. 239; Matter of Welling, 113 Fed. 189, 191, 51 C. C. A. 151; Matter of Pfaffinger, 164 Fed. 526, 21 Am. Bankr. Rep. 255. It is plain that the bankrupt could not himself have surrendered the policy and received its cash surrender value and under section 70a of the Bankrupt Law (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]), the trustee is only vested with powers the bankrupt might have exercised for his own benefit, not with those he might have exercised for other people. A trustee in bankruptcy has no greater rights than those possessed by the bankrupt. Matter of Chase, 124 Fed. 753, 755, 59 C. C. A. 629.

[15] I also think the rights of the plaintiff in the policies in question may be sustained upon the theory of an executed gift of the same. The proofs show that they were procured by the husband for the benefit of his wife and family, and were delivered by him to her for that purpose. She has since had possession of the same, either by herself personally or through her husband, whose possession was that of the wife. Under these circumstances the wife acquired an interest in the policies independent of the statute, of which her husband could not deprive her without her consent. Fowler v. Butterly, 78 N. Y. 68, 34 Am. Rep. 507; McGlynn v. Curry, 82 App. Div. 431, 81 N. Y. Supp. 855.

My conclusions are that no rights in the policies in question passed to the trustee in bankruptcy, and that the plaintiff possesses certain vested rights in the same which the courts will protect and enforce. The plaintiff is therefore entitled to a decree adjudging her interest in said policies as above set forth, and restraining the trustee in bankruptcy or her husband from disposing of the same or collecting the surrender value thereof, together with costs, to be paid out of the bankrupt's estate.

Findings may be prepared in accordance with this opinion, and, if not agreed to, settled before me on five days' notice.